## SECURITY UNION CASUALTY CO. v. ROBERTS et al. (No. 1538.)*

Court of Civil Appeal of Texas. Beaumont. July 1, 1927.

Rehearing Denied Sept. 21, 1927.

1. **Master and servant** ⊙⇒405(4)—**Employee working around oil derrick held, under the evidence, subjected to greater hazard from windstorm blowing down derrick than general public, entitling employee to recover compensation for injuries therefrom (Employers' Liability Act [Vernon's Ann. Civ. St. 1925, art. 8306 et seq.]).**

In suit to set aside judgment of Industrial Board awarding compensation to employee of oil company struck by derrick blown down by windstorm, evidence showed that employees working around oil derricks in oil fields were subjected to much greater hazard during high windstorm than persons sheltered by houses, and hence duties of injured employee subjected him to greater hazard from act of God, responsible for injuries, than ordinarily applies to general public entitling employee to recover for injuries, under Employers' Liability Act (Vernon's Ann. Civ. St. 1925, art. 8306 et seq.).

2. **Master and servant** ⊙⇒387—**Employee is not limited to specific compensation for amputation of arm, though he fully recovers from other injuries concurrently suffered within period for loss of arm (Employers' Liability Act [Vernon's Ann. Civ. St. 1925, art. 8306 et seq.]).**

Where employee sustains numerous injuries resulting in total incapacity for a period by amputation of one arm and partial loss of use of both legs, he is not limited by Employers' Liability Act (Vernon's Ann. Civ. St. 1925, art. 8306 et seq.) to specific compensation provided for amputation of arm, even though he fully recovers from all other injuries concurrently suffered prior to termination of period provided for loss of arm.

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused November 30, 1927.

3. **Master and servant ⊙⇒405(5)—Conclusion that employee was wholly unable to perform any manual labor held warranted by evidence of injury to legs (Employers' Liability Act [Vernon's Ann. Civ. St. 1925, art. 8306 et seq.]).**

In action to set aside award of Industrial Commission, under Employers' Liability Act (Vernon's Ann. Civ. St. 1925, art. 8306 et seq.), to employee suffering loss of arm and breaking both legs, evidence was sufficient to warrant conclusion that employee was wholly unable to perform any manual labor such as he had been accustomed to perform, or any other character of manual labor because of injury to legs.

4. **Master and servant ⊙⇒417(7)—Time during which injured employee is incapacitated from performing manual labor is question of fact for judge or jury.**

Length of time during which injured employee would be incapable of performing any character of manual labor depends on character and extent of injury in each particular case, and is usually question of fact for trial judge or jury to determine.

5. **Master and servant ⊙⇒387—Award to employee, suffering loss of arm and broken legs, of compensation in addition to that for loss of arm held proper (Employers' Liability Act [Vernon's Ann. Civ. St. 1925, art. 8306 et seq.]).**

In suit to set aside award of Industrial Commission, under Employers' Liability Act (Vernon's Ann. Civ. St. 1925, art. 8306 et seq.), to employee suffering amputated arm and broken legs when struck by falling oil derrick, award of compensation for injuries in addition to loss of arm was proper.

6. **Master and servant ⊙⇒417(5)—Objection to award for medical treatment to employee, not assigned as error, cannot be considered.**

Objection that judgment for medical and surgical treatment given employee immediately after injury was unreasonable and excessive, not assigned as error, cannot be considered by Court of Civil Appeals.

7. **Master and servant ⊙⇒385(16)—Charge of $625 for medical treatment given employee suffering broken arm and legs, and requiring constant treatment for 4 weeks, held reasonable.**

In suit to set aside award of Industrial Commission in favor of medical clinic for medical treatment given employee suffering broken arm and legs, and requiring constant care for 4 weeks immediately following injuries, charge of $625 *held* shown by evidence to have been reasonable.

8. **Master and servant ⊙⇒398—Insurer denying liability prior to 4 weeks after injury need not have been further notified of hospital services or extensions to be liable therefor (Employers' Liability Act [Vernon's Ann. Civ. St. 1925, art. 8306 et seq.]).**

Where insurer, prior to expiration of 4 weeks from date of injury to employee, denied all liability for hospital services required by injured employee, gave notice that it would not pay same, and denied all liability for injuries, it was unnecessary under Employers' Liability Act (Vernon's Ann. Civ. St. 1925, art. 8306 et seq.), to further notify insurer, or to make claim prior to furnishing hospital services, or to notify it of extension of time for hospital services, and hence employer could recover amount paid for such services.

Appeal from District Court, Liberty County; Thos. B. Coe, Judge.

Suit by the Security Union Casualty Company to set aside the judgment and final order of the Industrial Commission awarding compensation to J. B. Roberts, employee and claimant, against the Peer Oil Corporation, employer, and the Security Union Casualty Company, insurer. Judgment for defendants, and plaintiff appeals. Affirmed.

Fairchild & Redditt, of Lufkin, for appellant.

Baker, Botts, Parker & Garwood, of Houston, for appellees.

HIGHTOWER, C. J. The appellant, Security Casualty Company, prosecutes this appeal from a judgment against it in the district court of Liberty county, under the terms and provisions of the Employers' Liability Act of this state (Vernon's Ann. Civ. St. 1925, art. 8306 et seq.). The judgment as a whole is based upon the following facts:

On March 29, 1926, J. B. Roberts was an employee of the Peer Oil Corporation in Liberty county, near the town of Liberty, and his duties were to work at and upon oil derricks used in the production of petroleum oil by the Peer Oil Corporation. On the morning of March 30, 1926, about 2:30 a. m., Roberts was called out of his shack, together with two of his fellow employees, to perform services for the Peer Oil Corporation at what is known as Harrison well or derrick No. 2 owned and operated by the Peer Oil Corporation. Roberts and his fellow employees responded to the call and went to derrick No. 2 for the purpose of discharging the duties they were called out to perform, and while looking around for an iron rod, which these employees found it necessary to use in connection with the well at derrick No. 2, another derrick, known as Harrison derrick No. 4, was suddenly blown down by a severe windstorm that had then suddenly come up in the oil field, and Roberts' fellow employees, Kelly and Brown, assisting him on that occasion, were suddenly killed by the fall of the derrick, and Roberts himself was so severely injured that he was rendered unconscious and helpless, and was immediately removed from the oil field and carried to the city of Houston as quickly as possible, and was there placed in St. Joseph's Infirmary. The injuries sustained by Roberts were severe, and some of them very serious. His right arm was so badly mangled that it was necessary to amputate it about 4 inches be-

low the shoulder joint. Both of his legs were badly broken between the hips and knees. There was an injury to his head, and also to his shoulder above where the arm was broken, but these were minor injuries compared to the two first mentioned. Roberts remained in the hospital at Houston continuously and necessarily from March 30, 1926, to October 3, 1926.

At the time Roberts was injured, the Peer Oil Corporation was a subscriber under the Employers' Liability Act of this state, and appellant carried for that company a policy of insurance covering its employees, including Roberts.

In due and proper time after Roberts was injured, his employer and appellant were properly notified of his injuries, and appellant denied and repudiated any liability on account of Roberts' injuries, and thereafter, in due and proper time, Roberts filed his claim for compensation with the Industrial Accident Board of this state.

Immediately after Roberts was placed in the hospital at Houston, the Houston Clinic, a copartnership composed of several physicians in the city of Houston, was called in to give medical aid and surgical attention to Roberts on account of his injuries, and among other things performed by the Houston Clinic was the amputation of Roberts' arm and the treatment of all the injuries sustained by him. Appellant was notified within perhaps 36 hours after Roberts was taken to the hospital that it was necessary that he have medical and surgical attention, but it declined and refused to furnish such attention and denied any liability therefor, on the ground, first, that Roberts did not receive his injuries while in the course of his employment, and second, that his injuries were caused by the act of God, and that, therefore, appellant was not liable for any injuries sustained by him. The Houston Clinic went ahead and continued to treat Roberts, and for their services during the first 4 weeks immediately after his injury presented a bill to appellant for $625, which covered medical and surgical attention furnished him, and appellant denied liability to the Houston Clinic for these services and refused to pay the bill.

The undisputed evidence in this record shows, as we have stated, that Roberts was confined in the hospital on account of his injuries continuously and necessarily from the 30th of March, 1926, to the 3d of October, 1926, and that during the time he was there it was necessary that he have constant nursing and attention from the employees of the hospital, and he, did receive such services, but from the first appellant denied any liability for any hospital accommodations or services that might be furnished to Roberts for the same reasons that it denied liability to him and to the Houston Clinic.

Just, before the expiration of the 4 weeks immediately following the injuries to Roberts, one of the attending physicians requested the Industrial Accident Board to make an order extending the time for hospital services another week, showing the necessity therefor, and thereafter the attending physician made weekly requests to the Industrial Accident Board for further extension of hospital services, and these requests were granted by the Industrial Accident Board and the hospital services were continued under these orders up to the 7th day of June, 1926. For these hospital accommodations and services of nurses, the St. Joseph's Infirmary presented a bill to the Peer Oil Corporation, Roberts' employer, for the aggregate amount of $1,218.25, which was paid by the Peer Oil Corporation, and the evidence in this case shows that this bill was a reasonable charge by the hospital for hospital accommodations and services of nurses.

When Roberts filed his claim with the Industrial Accident Board for compensation, the Houston Clinic also filed a claim before the board for $625 for medical and surgical attention furnished to Roberts in treating his injuries, and the undisputed evidence shows that this was a reasonable charge by the Houston Clinic for the medical and surgical treatment furnished to Roberts. At the same time the Peer Oil Corporation filed a claim with the Industrial Accident Board for reimbursement of the amount it had paid for hospital accommodations and nursing fees on account of the injuries to Roberts, which amount, as we have stated, was $1,218.25, and, as we have stated, this, as shown by the evidence, was a reasonable charge for these services.

The record shows that all required notices to the parties concerned were given touching these claims before the Industrial Accident Board, and that upon a hearing that board awarded compensation to Roberts for the injuries sustained by him, and also ordered appellant to pay the Houston Clinic's medical and surgical bill and the claim of the Peer Oil Company for reimbursement for the amount paid by it for hospital accommodations in the amount as stated.

After due and proper notice to all parties concerned that it was unwilling to abide by the judgment and order of the Industrial Accident Board, and that it would file suit to set it aside, this suit was duly filed by appellant in the district court of Liberty county attacking the judgment and final order of the Industrial Accident Board on two grounds: (1) That the injuries to Roberts were not sustained in the course of his employment with the Peer Oil Corporation; and (2) that the injuries to Roberts were due to an act of God, and that at the time they were received Roberts was not engaged in the performance of duties that subject-

ed him to a greater hazard than ordinarily applied to the public generally. Roberts and the Houston Clinic and the Peer Oil Corporation answered appellants' petition attacking the board's award, and in addition Roberts filed the usual cross-action in such cases, and the Houston Clinic and the Peer Oil Corporation also filed their cross-actions praying for recovery for the same amounts that had been awarded them by the Industrial Accident Board.

The trial was before the court without a jury, and judgment was rendered in favor of the Houston Clinic against appellant for $625 for medical and surgical services rendered to Roberts for 4 weeks immediately following his injuries. Judgment was also rendered in favor of the Peer Oil Corporation against appellant for the sum of $1,218.25, representing the amount expended by the Peer Oil Corporation for hospital and nursing services.

That part of the judgment as between Roberts and appellant reads as follows:

"a. The sum of $539.15 representing total disability compensation for 29⅞ weeks, from April 6, 1926, down to the date of this judgment, at the rate of $18.41 per week, together with interest on each of said weekly installments as they respectively accrue, at the rate of 6 per cent. per annum, aggregating the further sum of $8.71, making the total recovery on this item to this date $547.86.

"b. The sum of $18.41 per week from this date for a period of 21⅞ weeks, which the court finds is the period in the future during which said Roberts will be continually incapacitated by reason of the injury sustained March 30, 1926, to his two legs without considering the loss of his arm. Each weekly installment shall bear interest at the rate of 6 per cent. per annum from the date that each becomes due until paid.

"c. In addition to the sum to be recovered by the said J. B. Roberts under paragraphs (a) and (b) hereof, he shall recover from said Casualty Company the sum of $5.52 per week, beginning at the termination of the compensation period mentioned and provided for in paragraph (b) hereof, and continuing for the period of 78 weeks; the recovery in this paragraph provided being for 30 per cent. partial incapacity after the termination of the aforesaid periods of incapacity, which said 30 per cent. partial incapacity is a result of the partial loss of use of the said Roberts' two legs resulting from the injury sustained on March 30, 1926. Each of said weekly payments shall bear interest at the rate of 6 per cent. per annum from the date they severally became due until paid.

"d. In addition to the amount to be recovered by the said Roberts under the provisions of paragraphs (a), (b), and (c) immediately preceding, the said Roberts shall recover from said Casualty Company the further sum of $18.41 per week for the definite and fixed period of 200 weeks, on account of the loss of his right arm above the elbow and near the shoulder joint, and said period of 200 weeks is in addition to and cumulative of the period provided for in paragraphs (a), (b), and (c) hereof and shall begin to accrue immediately upon the termination, from whatever cause, of the compensation period for which the said Roberts shall be paid under the provisions of paragraphs (a), (b), and (c). Interest shall be recovered on each of such weekly payments from the date they severally accrue until paid.

"e. The total recovery by the said Roberts under all paragraphs hereof shall not exceed 400 weeks' compensation, that is to say a period of more than four hundred and one weeks from the date of the injury. The amount awarded under paragraph (b), total disability subsequent to this date, and the amount awarded under paragraph (c), partial disability after termination of total, shall be subject to increase or decrease, termination or review, in accordance with the provisions of the Employers' Liability Act of Texas, upon the required showing by the said Casualty Company or the said Roberts of the existence of facts with respect to his incapacity justifying such review, in accordance with the provisions of such statute, but there shall be no review by this court as to the disability accruing prior to this date, nor as to the specific disability for the loss of the arm as provided in paragraph (d)."

The court then proceeded to order and decree that 15 per cent. of the total recovery awarded Roberts should be paid to his attorneys in this case. It is from this judgment as a whole that this appeal is prosecuted.

While appellant, by its pleading in the trial court, contended that Roberts' injuries were not sustained during the course of his employment, that contention is not made by appellant in this court. Appellant's first contention here is, in substance, that the injuries sustained by Roberts were due to an act of God, and that at the time he was injured he was not engaged in the performance of duties that subjected him to any greater hazard than ordinarily applied to the public generally. If the evidence in this case sustains appellant in this contention, it would not, of course, be liable to any of the appellees for any amount, and the judgment of the trial court should be here reversed and rendered in appellant's favor.

Assuming, as we shall at the outset, that the injuries to Roberts resulted from an act of God, as contended by appellant, the question remains as to whether the evidence in this case was legally sufficient to warrant a finding by the trial court that at the time Roberts was injured he was engaged in the performance of duties that subjected him to a greater hazard than ordinarily applied to the public generally.

As we have stated above, the undisputed evidence shows that about 2:30 a. m. on March 30, 1926, Roberts and two of his companions, Kelly and Brown, were called by an authorized agent of the Peer Oil Corporation to go to derrick No. 2 in the South Liberty oil field, owned and operated by the Peer Oil Corporation, to perform necessary services in making repairs of machinery used in connection with the well over which that

derrick was erected. It was in the nighttime and dark, and shortly after Roberts and his companions reached derrick. No. 2, a very violent windstorm suddenly came up; and while Roberts and his companions were performing their duties in and about derrick No. 2, another derrick, known as Harrison derrick No. 4, which the evidence shows was about 112 feet distant from derrick No. 2, was blown down and killed Roberts' two companions, Kelly and Brown, and badly injured Roberts himself to the extent hereinbefore stated. We shall not undertake to detail the evidence bearing upon the question as to whether the duties then being performed by Roberts subjected him to a greater hazard than the public in general in that vicinity were subjected to, but shall only state our conclusions of fact from the evidence as a whole on that point. This evidence establishes the fact that oil field derricks such as were the derricks in the Liberty oil field, where this unfortunate accident occurred, average about 112 feet in height tapering from the ground to the top. The base of such derricks averages from 20 to 24 feet. They are constructed of sawed timbers spiked together. There is no positive evidence in this record as to the exact velocity of the wind that blew down the derrick that injured Roberts and killed his companions, but there is positive testimony that the velocity of the storm wind at Houston about the same hour that night was approximately 82 miles per hour. Houston is about 50 miles distant from the Liberty oil field where Roberts was injured. The evidence shows that a number of derricks were blown down in the vicinity where Roberts was injured, and also that a house or two somewhere near that vicinity was blown down, and perhaps a tree or two was blown down. The evidence was also sufficient to show that oil derricks are more easily blown down by a high windstorm than are houses or trees, and that it is not an uncommon occurrence for many derricks in oil fields to be blown down by the same windstorm, when it occurs.

[1] All the evidence shows, we think, that those working at and around oil derricks in oil fields are subjected to a much greater hazard while a high windstorm is raging than are those sheltered by houses, which are lower and nearer the ground, more compact, and less liable to be blown over by a storm. This being so, we hold that the duties which Roberts was performing at the time he was injured subjected him to a much greater hazard from the act of God responsible for his injuries than ordinarily applies to the general public, and from this conclusion it results that appellant's first contention must be overruled. United States Fidelity & Guaranty Co. v. Rochester (Tex. Civ. App.) 281 S. W. 308; writ of error denied, 115 Tex. 404, 283 S. W. 135; Texas Employers' Insurance Association v. Moore (Tex. Civ. App.) 279 S. W. 516; Security Union Casualty Co. v. Brown, recently decided by this court, 297 S. W. 1081.

[2] Appellant's next contention for reversal of this judgment is, in substance, that, even conceding that the employee Roberts was entitled to recover any amount for the injuries sustained by him, such recovery, under the undisputed facts and the law applicable to them, should have been confined to the compensation that he was entitled to for a period not to exceed 200 weeks for the loss of his arm, and that the other injuries sustained by him were concurrent injuries, and were not compensable under our Employers' Liability Act. The proposition advanced by learned counsel for appellant in this connection is that an employee, who sustains concurrent injuries resulting in concurrent incapacities, shall receive compensation only for the injury which produces the period of longest incapacity, excepting cases where the injuries result in the loss of one or more members covered under the section of the Workman's Compensation Act relating to specific injuries, Vernon's Ann. Civ. St. 1925, art. 8306, § 12. It is insisted by counsel for Roberts that the proposition here advanced by counsel for appellant is not applicable to the facts of this case. We think that appellant's proposition, as an abstract one, is correct, but we agree with counsel for appellee that it cannot have application upon the facts of this case. We think that the following proposition advanced by counsel for Roberts does have application to the facts in this case. This proposition is:

"Where an employee sustains numerous injuries resulting in total incapacity for a period, in the amputation of one arm, and in the partial loss of the use of both legs because of injuries thereto, he is not limited to the specific compensation provided for the amputation of the arm, even if he will have full recovery from all other injuries concurrently suffered prior to the termination of the period provided in the schedule for the loss of an arm."

[3] As we have stated above, the evidence in this case shows without dispute that Roberts was very seriously and painfully injured. He was continuously confined in the hospital for approximately 6 months. Both of his legs between the hips and knees were badly broken, and his right arm, as we have stated, was so severely mangled that amputation was necessary. His right shoulder was also badly injured, but we think the evidence in this case shows that the injured shoulder was practically well at the time of the trial. Several physicians testified in the case, and one of them testified, in substance, that recovery from broken legs such as Roberts had in this case could be reasonably expected within a period ranging anywhere from 6 months to 3 years, depending upon the condition of the man and the full extent of

the injury. Another physician testified that an injury to a man's legs, such as was sustained by Roberts, ordinarily is recovered from within a year from the date of the injury. The undisputed testimony shows that the injuries to Roberts' legs were so severe and affected him to such an extent that he was necessarily and continuously confined to the hospital for practically 6 months, as we have stated, and he had only been able to get about a few days at the time he attended the trial of this case. He testified, in substance, that the pain in his legs where they were broken had been at times quite severe, and it had been continuous from the time he was injured to the time of the trial, and that he was still suffering pain in his legs about where the fractures occurred. The evidence was sufficient to warrant the conclusion by the trial judge that on account of his injuries to his legs, as they existed at the time of the trial, considering the pain suffered by Roberts, he was wholly unable to perform any manual labor such as he had been accustomed to perform before he was injured, or any other character of manual labor.

[4, 5] As to how long such condition would probably continue is a matter that no man could say with certainty. Medical men themselves widely differ about such matters, and it depends at last upon the character and extent of the injury in each particular case, and is usually a question of fact for a trial judge or jury to determine. The judgment of the trial court showing the items of recovery awarded Roberts indicate the finding of the trial court as to the extent of his injuries, and these we have copied hereinabove. We think that the judgment of the trial court as to the amounts awarded Roberts in addition to that for the loss of his arm has support in the opinion of the court in the case of Texas Employers' Insurance Association v. Moreno (Tex. Com. App.) 277 S. W. 84. See, also, Lumbermen's Reciprocal Association v. Anders (Tex. Civ. App.) 292 S. W. 265. Appellant's second proposition is therefore overruled.

[6, 7] Appellant's next contention is, in substance, that the judgment in favor of Houston Clinic for $625 for medical and surgical treatment to Roberts for 4 weeks immediately following his injuries is unreasonable and excessive. We find upon inspection of the record that there is no assignment of error to which this proposition relates, and we would therefore be without authority to consider this proposition. If, however, we could consider it, we should have to overrule it, for the reason that, as we read the testimony in connection with this matter, it was wholly without dispute and shows that the physicians of the Houston Clinic who rendered these services to this injured man made only a reasonable charge for the same. The evidence in this connection shows that Roberts' injuries as a whole were of such nature as to require constant and careful medical and surgical attention, and that he received it at the hands of these physicians, most of it long after appellant had denied any liability to any one for Roberts' injuries.

Appellant's next and last contention for reversal is reflected by the following proposition:

"The allowance of $1,218.25 to an employer covering hospital and nursing services for a period of time, beginning March 30th and ending June 7th, is excessive and unreasonable. An insurance company writing compensation insurance, under the Employers' Liability Act of the state of Texas, would not be responsible for medical, surgical, and hospital treatment rendered an employee after 4 weeks from date of injury, when said hospital, medical, and surgical treatment were given without knowledge and consent of the insurance company, and without giving said insurance company an opportunity of being heard as to whether said medical, hospital, and surgical services were necessary or reasonable."

[8] Counsel for appellee seriously object to our considering this proposition for the reason, as they assert, that it is multifarious and raises two distinct questions. We are inclined to think that counsel for appellee are correct in this contention, but, nevertheless, we will consider the proposition as advanced. Counsel for appellee in their brief advance the following counterproposition to appellant's proposition just above quoted:

"Where the compensation insurer prior to the expiration of 4 weeks denies all liability for hospital services required by an injured employee, and gives notice that it will not pay for same, it becomes unnecessary to further notify or make claim to said insurer prior to the furnishing of such services or to notify it of applications to the board for an extension of time."

We think this counterproposition is sound and ought to be sustained as applied to the facts of this case. We shall not dwell at length upon this question. The undisputed testimony shows that within approximately 36 hours after Roberts was injured appellant was notified of the injury and denied and liability therefor on the grounds hereinbefore stated. The physicians of the Houston Clinic who treated Roberts, notwithstanding appellant's denial of liability, rendered valuable and faithful services, so far as this record shows, and it is also shown by the undisputed evidence that the charges for hospital services and nursing fees were also reasonable. Appellant, as this record reflects, knew prior to the expiration of 4 weeks after the injury that an extension of hospital services would be applied for, and that such services would be necessary, but it declined to recognize any liability therefor, and the whole record shows that appellant would

never have consented to have hospital services extended for any period of time, and therefore we hold that it was unnecessary to notify appellant each time that an extension of hospital services was applied for in order to give it a chance to consent thereto or to be heard on the question. The undisputed evidence in this connection shows that every extension made by the Industrial Accident Board for hospital services was necessary, and that the charges, as we have stated, made for same were reasonable. We therefore overrule this contention.

From these conclusions it results that the judgment should be affirmed, and it has been so ordered.