**FEDERAL UNDERWRITERS EXCHANGE
v. BRIGHAM et al.**

No. 4377.

Court of Civil Appeals of Texas. El Paso.
May 25, 1944.

Rehearing Denied June 15, 1944.

Mohrle & Oster, of Dallas, Lightfoot, Robertson & Gano, of Fort Worth, and Dan Moody and J. B. Robertson, both of Austin, for appellant.

Ben T. Warder, Jr. and Carter & Gallagher, all of Dallas, for appellees.

McGILL, Justice.

This is an appeal by Federal Underwriters Exchange, compensation insurance carrier, from a judgment of the 101st Judicial District Court of Dallas County in favor of Mary Emma Brigham and four of her minor children, beneficiaries of Benjamin F. Brigham, deceased, who is alleged to have died from an accidental injury sustained by him while in the course of his employment by Ashburn Ice Cream Company.

Appellant instituted the suit to set aside an award of the Industrial Accident Board, and appellees, by cross action, sought to recover as such beneficiaries. Dr. C. C. Nash, Drs. Terrell, Witt & Cheavens, Samuells Clinic, and St. Paul's Hospital, intervened and sought recovery for necessary and reasonable medical and hospital services rendered to the deceased. Trial to a jury resulted in judgment in favor of appellees on their cross action, including a fee for the guardian ad litem for the four minors, and in favor of interveners for their respective claims for medical and hospital services.

No question is raised as to the pleadings, and it is unnecessary that they be stated except as hereinafter.

Prior to August 15, 1942, the deceased, Benjamin F. Brigham, was employed by the Ashburn Ice Cream Company, which was engaged in the manufacture, sale and distribution of ice cream in the City of Dallas. On that date, while engaged in labeling ice cream at the plant, Brigham was struck on his head by a cardboard box containing one thousand wooden spoons, and which the evidence was sufficient to show weighed from twenty-five to forty pounds, and fell from a platform on which it was stored above the floor of the plant where he was working.

The jury found that Brigham sustained an accidental injury to his brain while working for Ashburn Ice Cream Company on or about August 15, 1942, which resulted in his death on October 16, 1942. Also that a food handler's health certificate had been issued to Brigham, deceased, by the Health Department of the City of Dallas within six months prior to August 15, 1942, and that such certificate was posted at the place of business of the Ashburn Ice Cream Company on August 15, 1942. There were other findings which will be hereinafter referred to.

Notwithstanding the above findings, appellant seeks to bring this case within the rule applied by the Supreme Court in Rogers v. Traders & General Ins. Co., 135 Tex. 149, 139 S.W.2d 784, 128 A.L.R. 1305, and Service Mutual Ins. Co. v. Blain, 140 Tex. 541, 168 S.W.2d 854, that one required to have a health certificate by statute, Vernon's Ann.Penal Code, art. 705c (and by ordinance of the City of Dallas in this case), and who is hired to work without having such certificate, is not an employee within the purview of the Workmen's Compensation Act. Vernon Ann.Civ. Statutes, art. 8306 et seq.

The gravamen of the complaint is that the evidence was insufficient to support the two findings last above referred to, and error in the admission of certain oral testimony in reference thereto.

An ordinance of the City of Dallas in effect at the relevant time required the possession of a health certificate from the director of public health of the City of Dallas similar in all respects to the certificate required by article 705c of the Penal Code, supra, at the time of employment by food handlers such as Brigham. Two methods were prescribed for obtaining the certificate: The applicant could pay $1 to the city assessor and collector of taxes, obtain a receipt in writing therefor, and then obtain a medical examination at the office of the director of public health which, if satisfactory, entitled him to the certificate; or he might present a record of a medical examination made within the preceding five days by any reputable physician recorded upon a form furnished by the Health Department to the director of public health, and the director was required to examine such record, and if satisfied that the examination was made in accordance with the applicable "Ordinances and Codes" to approve same and cause a record thereof to be made in his office. It then became the duty of the applicant to pay to the assessor and collector of taxes 50 cents as a registration fee. The ordinance provided: "It shall be the duty of the Director of Public Health to keep a permanent record together with the date of issuance of all health certificates issued to persons under this Chapter."

It also provided that health certificates should be effective for a period of six months from the date of examination unless sooner revoked by the director of public health.

Dr. E. G. Lyon, health officer for the City of Dallas, testified that he did not have a record of the issuance of a health certificate to Benjamin F. Brigham during the year 1942; that he knew Brigham casually; that he examined him around the 1st of July or August, 1942, at his office at the City Hall for the purpose of issuing him a health card, and did issue him a health card of the type issued to food handlers; that such health card was never revoked or cancelled; that during the last part of the year 1942 or the early part of 1943, under orders of the City Council, a great many of their records were destroyed to aid the scrap paper drive, and that at present only records for the past six or seven months were kept; that he was not familiar with the ordinance requiring permanent records of health certificates to be kept.

A former employee of the Ashburn Ice Cream Company testified that he was working for the Company with the deceased on August 15, 1942, and that the Company required him to have a health card; that there was a place designated at the plant for health cards to be posted, and that the deceased had a health card posted in this place at that time.

J. C. Brigham, son of the deceased, testified that he was at the plant of the Ashburn Ice Cream Company every day and passed by the place where the health cards were posted, and saw his father's health card posted there before he was injured.

An inspector of the Health Department testified that on June 19th and July 1, 1942, he inspected the health cards at the Ashburn Ice Cream Company plant, and on June 19th found some cards out of date and requested the Company to get them corrected, and that on July 1st every card was in date; that he checked the payroll against the health cards and on July 1st they were all in force; that it was his practice when he found a health card which was to expire within a month to warn the employee to have such health card renewed; that he gave them a month's warning; that on July 1st he did not remember warning any of the employees to do this.

Appellee Mary Emma Brigham, widow of the deceased, testified to effect that she had made diligent search among deceased's personal effects and she and the manager of the Ashburn Ice Cream Company testified that they had made diligent search at the plant for the health card of deceased and could not find it.

We think all of this evidence was admissible and ample to support the jury's findings as to the issuance to deceased of a food handler's health certificate and the posting thereof. Of course, the best and primary evidence of the issuance, existence and contents of such health certificate would have been the certificate itself, since by both the statute and ordinance it was required to be in writing. The record of the certificate, had such been found in the Health Department, as required by the ordinance, would have constituted only secondary evidence of such facts. Dr. Lyon's testimony was secondary evidence of the issuance and, we think, to some extent of the contents of the health certificate in question, since he testified without objection that it was "a regular health card issued to food handlers." It is to be presumed that he performed the duty imposed by statute and ordinance in inserting the contents of the certificate, and while we think further evidence as to its contents was improperly excluded, this testimony was sufficient to support the finding that a "food handler's" certificate had been issued to deceased at the time he was examined by Dr. Lyon. The issuance of the certificate having been established by uncontroverted, competent sworn testimony, and a failure to produce it having been accounted for by proof of diligent search and inability to find it, parol evidence of its contents was admissible. 17 Tex.Jur. § 189, p. 487.

Evidence that deceased had a health card posted in the customary place at the plant when he was injured and on July 1st was admissible in connection with Dr. Lyon's testimony that he examined him and issued him a health certificate on July 1st or August 1st. The jury could properly consider the posting of a health card relating to the deceased on August 15th or July 1st as corroborative of Dr. Lyon's testimony that he examined him and issued him a health card on July 1st or August 1st, as well as to establish the ultimate fact that a health card effective August 15th was posted on that date.

Appellant attaches much weight to the testimony of a deputy city tax collector to effect that his office keeps a permanent record of payments by applicants for health certificates. He produced a record of a receipt for $1 from deceased in payment for medical examination fee for food handlers dated January 20, 1942, and testified that his records did not show any further evidence of issuance of any other

receipts to deceased; that he only checked the records from June 20, 1942, to August 20, 1942.

We do not attach much importance to this testimony. The ordinance specifies no time in which the applicant, after procuring a receipt from the tax collector, shall apply to the health director for his examination. It is apparent that the evidence loses its probative force by showing that the check covered from June 20th to August 20th only. It is quite possible that the receipt may have been issued prior to June 20th, and that the applicant presented it to the health director when he received his examination on July 1st or August 1st. Indeed, the testimony of the health inspector to effect that on July 1st he checked the cards posted at the plant and that they were all in date and that it was his practice to notify or warn an employee to renew his card when he found that it expired in less than a month, tends to support such theory. Furthermore, we think payment of the fee prescribed by the ordinance to the collector was not a prerequisite to the issuance of a valid health certificate. The ordinance clearly contemplates that where the examination is made by a physician other than the director of public health, the 50 cent fee is not payable to the tax assessor until after the issuance of the health certificate. The purpose of the ordinance, as well as of article 705c of the Penal Code, was for the protection of the public against the handling of food by persons having an infectious or contagious disease as a safeguard to the public health. Service Mutual Ins. Co. v. Blain, supra; Rogers v. Traders & General Ins. Co., supra.

This purpose would be accomplished both under the ordinance and the statute by issuance of the health certificate without payment of any fee. The deceased may have owed the City of Dallas $1, but we think such fact would not have divested him of the status of an employee within the contemplation of the Workmen's Compensation Law.

■ Appellant assails the findings that deceased sustained an accidental injury to his brain on August 15th which naturally resulted in his death on October 16th. The evidence relative to these issues is lengthy, and it would serve no useful purpose and unduly lengthen this opinion to detail it in full. Briefly summarizing, it was sufficient to show that prior to August 15, 1942, deceased had worked every day for three years and had enjoyed good health; that on that date a cardboard box weighing from twenty-five to forty pounds fell from a platform nine feet from the floor where he was working and struck him on the head; that he seemed dazed when he was hit and during the following week complained of headaches, would not eat normally or do customary yard work, complained of being tired, became confused in his speech, referring to objects and persons by incorrect names; that about ten days after he was hit he became irrational in his conversation, could not express himself and had difficulty in hearing. After a period of two weeks he went to a hospital, remained two days, came home and remained in bed two weeks, during which time he complained of a buzzing in his head and did not seem to understand well. He was again placed in a hospital on September 15th, where he remained in a semi-coma state until his death on October 16th; that he had had convulsions sometimes at different times since 1929, but none within the past six years, except a slight attack in 1938.

Medical testimony showed that a spinal puncture was made on September 15th and blood found in the spinal fluid; that he was partially paralyzed in his right arm and leg, was operated upon on October 15th and a blood clot found on the left side of the brain just above the ear; his condition was diagnosed as showing a hematoma or blood clot on the brain. The doctor who performed the operation gave as his opinion that the condition he found was caused by the blow received by deceased; that the fact that there was no exterior wound on his head was immaterial; that frequently a slight blow would cause such condition, and that he did not think that convulsions would have had anything to do with it; that in his opinion, the death of the deceased was due to a head injury.

We think the evidence was amply sufficient to sustain the findings of accidental injury sustained by the deceased in the course of his employment resulting in his death. It is of even more probative force than the evidence held to raise such issues in Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581. We overrule these points.

■ The contention that, since neither claimants nor deceased gave actual notice within thirty days from the date of the

injury to appellant or to the employer, as required under the provisions of article 8307, section 4a, Vernon's Ann.Civ.Sts., they could not recover, was decided adversely to appellant in Texas Employers' Ins. Co. v. Lovett et al., Tex.Civ.App., 19 S.W.2d 397, 398, writ refused. It was there held that "The provision with reference to giving notice of the injury within 30 days has no application 'in case of death of the employee.'" In all of the cases cited and relied on by appellant the claim was by the employee for disability, not by his heirs or beneficiaries for death. Hence these authorities are inapplicable.

There is no merit in the contention that the evidence failed to establish a weekly wage or that an issue as to such wage should have been submitted to the jury. The employer's wage statement relating to the service record of the deceased shows that he worked 354 days during the 12 months immediately preceding his injury and earned $1,170.50 during this period. These facts were uncontroverted. The court based his award of $13.51 per week on sixty per cent of 1/52nd of the $1,170.50 earned during the preceding year, and rendered judgment based thereon for a period of 360 weeks, plus accrued interest. This was the correct method of computation, Texas Employers' Ins. Ass'n v. Storey, Tex.Com.App., 17 S.W.2d 458, and since the report was uncontroverted, no issue for the jury was presented. Casualty Reciprocal Exchange v. Stephens, Tex. Com.App., 45 S.W.2d 143, at page 147; Associated Indemnity Corp. v. McGrew, 138 Tex. 583, 160 S.W.2d 912, at page 915.

Likewise without merit is appellant's contention that there is no evidence to establish coverage. Appellees' answer and cross action alleged facts showing that the Ashburn Ice Cream Company was an employer subject to the provisions of the Employers' Liability Act, and, further, that such Company was a subscriber within the meaning of the Act and had paid a premium for and secured a policy of workmen's compensation insurance from appellant, a Company duly licensed to write such insurance, and that such policy was in full force and effect on the date that decedent was injured. These allegations were not denied by appellant by verified pleadings, and therefore under the specific provisions of Rule 93, Texas Rules of Civil Procedure, n(6), must be presumed to be true. They clearly establish coverage.

All of the medical and hospital services for which interveners sought recovery were rendered to the deceased subsequent to the four weeks' period after the injury, with the exception of those of Drs. Terrell, Witt & Cheavens. No attending physician certified the necessity for such services to the Industrial Accident Board or to appellant. Interveners, by adopting allegations of appellees' cross action, alleged that both the employer-subscriber, Ashburn Ice Cream Company, and appellant had actual knowledge of deceased's injuries immediately after the same were sustained. Deceased's son, J. C. Brigham, testified that he notified the manager of the Ice Cream Company of the injury sustained by his father about ten days after the accident and discussed the matter with him; that he visited the office of the adjuster of appellant and talked to him about his father's injuries about three weeks after the accident. This testimony was uncontroverted. Appellant failed to furnish any medical or hospital services to deceased. The testimony was uncontroverted that the services rendered by Drs. Terrell, Witt & Cheavens were necessary and that the claim for $25 therefore was reasonable. The above allegations were not denied by verified pleadings, and under Rule 93n(1) Rules of Civil Procedure, appellant was charged with notice of the injury and is liable for such claim as a matter of law. Traders & General Ins. Co. v. May, Tex.Civ.App., 168 S.W.2d 267, at page 271, writ refused want of merit.

The other interveners failed to show compliance with the plain language of the statute requiring the attending physician to certify to the Industrial Accident Board and the Association, insurance carrier, the necessity for additional medical attention after the four weeks' period. They contend that such certification was unnecessary, since appellant had notice of the injury, failed to provide medical or hospital services during the four weeks' period and denied liability, and cite Security Union Casualty Co. v. Roberts, Tex. Civ.App., 298 S.W. 164 writ refused, in support of such contention. In that case the necessity for services was certified by the attending physician to the board but not to the association. The association had notice of the injury within thirty-six hours after it occurred and denied liability. It knew prior to the expiration of the four weeks' period that an extension of hospital

services would be applied for and would be necessary, and it was shown that it would never have consented to have such hospital services extended for any period of time. The undisputed evidence showed that every extension made by the Industrial Accident Board for hospital services was necessary and that the charges therefor were reasonable. The court held on such record that it was unnecessary to notify the association each time that an extension of hospital services was applied for in order to give it a chance to consent thereto or to be heard on the question. The record here does not show that ·appellant denied liability or knew of the necessity for extending medical or hospital services within the four weeks' period and would not have consented thereto. The case is distinguishable on these grounds. We also think it is distinguishable for the reason that in the case cited necessity for additional services was certified to the Industrial Accident Board and extension therefor authorized by it. Under article 8306, section 7b, it is contemplated that the Board shall pass on the necessity for additional services. Hence the necessity for certification to the board is mandatory, and while appellant may waive such certification to it, under the facts shown in Security Union Casualty Co. v. Roberts, supra, it does not thereby waive the right to have the board pass upon the necessity for such services prior to the time they are rendered. The court erred in allowing interveners' claims for such services.

■ Appellant attacks the allowance of a fee of $250 for the guardian ad litem appointed to represent the four minors and taxed as costs. The court originally appointed R. G. Carter, an attorney, as guardian ad litem for the minors, and he prepared and filed an answer for all appellees to the suit instituted by appellant to set aside the award of the board. This answer also included a cross action against appellant in behalf of all appellees in which a $1,500 fee for the guardian ad litem was sought. Thereafter appellant dismissed its suit. without prejudice to the cross action and subsequently, by pre-trial exception, attacked the right of Carter to recover a fee as guardian ad litem. Thereupon the court removed Carter as guardian ad litem and appointed Harvey C. Ford, an attorney, as guardian ad litem for the minors. Carter then filed a second supplemental answer and cross action for all appellees, in which the same fee for the new guardian ad litem

was sought. The court allowed $250 as this fee. Carter was allowed one third of the award, including that to the minors, as his fee.

Rule 173, Rules of Civil Procedure, provides that where a minor is a party to a suit, either as plaintiff, defendant or intervener, and is represented by a next friend or guardian who appears to have an interest adverse to such minor, the court shall appoint a guardian ad litem for such minor and shall allow him a reasonable fee for his services to be taxed as costs. There is nothing in the compensation statute that takes the case out of this rule, nor any provision thereof contrary thereto. Consolidated Underwriters v. Saxon, Tex.Civ. App., 250 S.W. 447, reversed on other grounds, Tex.Com.App., 265 S.W. 143.

■ Sections 7c and 7d of article 8306 have no application to fees of guardians ad litem or to costs. Norwich Union Indemnity Co. v. Smith, 117 Tex. 103, 298 S.W. 403, in which the holding of the Court of Civil Appeals in Consolidated Underwriters v. Saxon, supra, on the point there in question, was expressly approved.

That appellant had dismissed its suit prior to the appointment of the new guardian ad litem is immaterial under the new provisions of Rule 173 (formerly Art. 2159, R.C.S.), that such guardian shall be appointed where the minor is a party to the suit as plaintiff and a fee allowed him where his interest is adverse to the guardian representing him. This item of cost might not have been incurred had it not been for appellant's "desire to bring all possible claimants into the suit." Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81, at page 96. But, regardless of this consideration, here the minors' interests were adverse to Mrs. Brigham's, who was represented by Carter, insofar as the apportionment of the award was involved.

Under the plain provision of the new language of Rule 173, under the facts above outlined, the appointment of a new guardian ad litem and allowance of a reasonable fee to be taxed as costs was proper, if not mandatory.

■ The jury found that each of appellees, the widow and four minor children, would suffer a manifest hardship and injustice if the compensation due them were not paid in a lump sum instead of weekly payments. The evidence was sufficient to support these findings. It showed that the widow was employed and earning $18 per

week; that her eldest daughter, 18 years of age, earned $18 per week; and she received some money from her son who was in the Army; that she received social security on the two younger children, of ages 14 and 12 years; that her husband left only a life insurance policy for $370, which was insufficient to cover his burial expenses; that it had become necessary to take her 16 year old daughter out of school and put her to work in order for the family to get along.

Weekly payments are provided for in the workmen's compensation statute out of regard for the beneficiaries themselves, and not out of regard for the insurance carriers. Consolidated Underwriters v. Saxon, Tex.Com.App., 265 S.W. 143, at page 146. The jury could logically conclude that it was for the best interest of these minors that a reasonable allowance be made out of the compensation due them for their immediate support, maintenance and education. The statute leaves it to the sound discretion of the court or jury to determine as to what constitutes a "special case" authorizing the award of a lump sum, and their finding should not be disturbed unless a manifest abuse of discretion is shown. Texas Employers' Ins. Ass'n v. Downing, Tex.Civ.App., 218 S.W. 112, at page 120, writ refused; Consolidated Underwriters v. Saxon, supra; Indemnity Ins. Co. of North America v. Wright, Tex. Civ.App., 69 S.W.2d 438, writ dismissed.

The judgment is reformed so as to eliminate the awards to interveners for medical and hospital services other than that of Drs. Terrell, Witt & Cheavens, and as so reformed is in all other respects affirmed.