Warren J. LOVE, Individually and as Next Friend of Idaliah J. Love, Appellant,

v.

The TRAVELERS INSURANCE COMPANY, Appellee.

No. 7663.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 12, 1965.

Rehearing Denied Nov. 16, 1965.

Otto B. Mullinax, Mullinax, Wells, Morris & Mauzy, Dallas, for appellant.

John A. Gilliam, Thompson, Knight, Wright & Simmons, Dallas, for appellee.

DAVIS, Justice.

Plaintiff-appellant, Warren J. Love, sued defendant-appellee, The Travelers Insurance Company, for workmen's compensation, and doctor and hospital bills, for and on behalf of his wife, Mrs. Idaliah J. Love, for injuries she received while working for Safeway Stores, Inc., in Dallas County, Texas. The injury occurred on the afternoon of March 18, 1961, when Mrs. Love was sitting on a cardboard box, which she thought was full of canned goods. The box was empty and gave way, dropping her to the concrete floor, injuring her tailbone, lower back, coccyx, including the bone, nerves, muscles, tissues, and producing a ruptured or herniated disc in the Fifth Lumbar vertebra area. The injury was so severe that she instantly cried. Her employer was there and helped her up after the fall. She continued to work for about a week while going to see Dr. John H. Harakal, a doctor near the store. She was paid weekly compensation from March 27, 1961, until June 5, 1961. On June 5, 1961, she returned to work, but had to continue to see the doctor. She continued to suffer such severe pain and had to quit work on July 29, 1961. Weekly compensation was commenced again on July 31, 1961, and continued to December 5, 1962.

Appellee had Mrs. Love examined by a Dr. Branch, and later by Dr. John B. Gunn. Dr. Gunn found Mrs. Love to have been injured and had her admitted to Baylor Hospital and treated her by therapy, traction, and muscle relaxants. He thought she had a ruptured or herniated disc, but was not firm in his diagnosis.

Mrs. Love's pain persisted. Dr. Gunn referred her to Dr. Cherry, who ran a myelogram. The myelogram showed a small defect on the left at L-4 and L-5. This was discounted by Dr. Gunn, as most of her pain was on the right side. She was given more traction and therapy. Dr. Gunn then called Dr. Stephen Weisz, a psychiatrist, suspecting psychomatic problems. Dr. Weisz saw Mrs. Love once, or twice. She

was discharged from the hospital on September 20, 1961, with tranquilizers prescribed, and her condition was *unimproved*. Mrs. Love continued to see Dr. Gunn after she left Baylor Hospital, and continued to follow his prescriptions. Later, Mrs. Love showed an allergy to a prescription that was given by Dr. Gunn. A phone call was placed to Dr. Gunn's office. Dr. Gunn was not present, and their number was left for Dr. Gunn to call. Dr. Gunn did not call them. Then Mrs. Love called appellee's agent, who consented for her to return to Dr. Harakal.

By Nov. 11, 1961, Mrs. Love was having radiating pain in the back and down the right leg. She was sent to Dr. Charles M. Hawes, an orthopedic surgeon, for consultation. Dr. Hawes suspected the possibility of a ruptured disc. The appellee wrote Dr. Hawes on Jan. 24, 1962, authorizing his examination of Mrs. Love. Dr. Hawes then placed her in the hospital and ran a myelogram. The x-rays during the myelogram showed a small ventral defect at the last segment beween the lumbar spine and pelvis. Mrs. Love continued to have episodes of low back pain and right leg pains. The appellee refused to authorize an operation, and advised Dr. Hawes that after his examination he felt an operation was necessary, that he must contact it for the authorization of the operation. It further advised Dr. Hawes that prior to the operation that it insisted Mrs. Love be re-examined by Dr. Gunn.

On May 17, 1962, Dr. Hawes wrote to appellee, recommending an operation to remove the lower lumbar ruptured disc and a stabilization of the lumbo sacral area of the back, with a copy of the letter to Dr. Harakal and appellant's attorney. Appellee never responded to this letter. There were several contacts made by and on behalf of Mrs. Love with respect to the operation, but the record is completely silent as to appellee's response thereto.

On June 6, 1962, appellee had Dr. Gunn re-examine Mrs. Love. Dr. Harakal and

appellant were present for the examination. Dr. Gunn found that Mrs. Love's back was stiffer, but he could not say that he could diagnose a herniated disc. Dr. Gunn recommended that she remove the back brace and that she become more active, to see if any disc that hadn't completely shown itself might protrude further; and then they operate.

Mrs. Love continued to suffer severe pain in her back and in her right leg, and she was admitted to the Dallas Osteopathical Hospital on June 25, 1962. Dr. Hawes and Dr. Harakal, by surgery, removed a ruptured disc on June 27, 1962.

The case was tried before a jury. The jury found that Mrs. Love sustained an injury on March 18, 1961, while in the course of her employment. The jury found that she sustained total and permanent incapacity, and that the injury was the cause thereof. The jury found that the total incapacity began on July 30, 1961, and ended on September 26, 1962. The jury found that Mrs. Love had sustained some partial incapacity, that the injury was the cause of such, that the partial incapacity began on Sept. 27, 1962, and that it would be permanent. The jury found that Mrs. Love would be able to earn $75.36 per week during her permanent partial incapacity. The jury found that appellee had not refused or failed to furnish medical aid to Mrs. Love. The jury found that the incapacity of Mrs. Love was not solely caused by diseases or conditions unassociated with and not aggravated with the accident of March 18, 1961. Judgment was entered for the total incapacity, as found by the jury for a total period of 60 weeks and 2 days, and partial permanent incapacity for the total sum of $24.00. Appellant's motion for new trial was overruled, and he has appealed. He brings forward 8 points of error.

■ By his points 1, 2, 3, 4, and 8, appellant says the trial court erred in refusing to grant him a judgment for the medical, surgical and hospital bills for the disc sur-

gery, and in refusing to disregard the jury's answers to the special issue inquiring about hospital and medical bills because the evidence that appellee did not refuse, fail or neglect to furnish medical aid is against the undisputed evidence and the jury's answer to special issues is against the great weight and preponderance of the evidence so as to be clearly wrong. Appellee seems to rely upon the case of Robertson v. National Surety Corp., U.S.C.A. 5th Cir. (1953) 208 F.2d 642. This case holds that the hospital and medical expenses had been *voluntarily incurred* by the plaintiff. Such does not seem to be true in the present case. Mrs. Love secured the injury on March 18, 1961. From that date until after she was operated upon she suffered continuous pain. She had undergone two myelogram tests and had filed an application with the Industrial Accident Board for the operation. Apparently the pain became so severe that she could not wait. The appellee was put on notice of the operation, and was asked if they would furnish the same. To this notice and request the appellee did not reply. It seems that Art. 8306, Secs. 7 and 7a, Vernon's Ann.Civ.St., has been amended and provides for such medical and hospital services. Travelers Insurance Co. v. Hernandez, U.S.C.A. 5th Cir. (1960) 276 F.2d 267. The insurance company had notice of the operation prior to the time it was had, and they are bound thereby under the statutes. Art. 8306, Secs. 7, 7a and 12e, V.A.T.C.S.; Texas Employers' Insurance Ass'n., v. Drummond, CCA (1924) 267 S.W. 335, appvd. by S.C. (1926) Tex.Com.App., 279 S.W. 1116; Federal Underwriters Exchange v. Brigham, CCA (1930), 184 S.W.2d 849, N.W.H.; Texas Employers Ins. Ass'n. v. Hodnett, CCA (1948) 216 S.W.2d 301, W.R., N.R.E.; Maryland Casualty Co. v. Hendrick Memorial Hospital, Tex.Comm.App. (1943) 169 S.W.2d 969; 63 T.J.2d 91, Sec. 177. The points are sustained.

■ By points 9 through 14, appellant complains of the error of the trial court for

admitting into evidence evidences of other illnesses and hospital records without a *proper predicate being laid therefor.* Art. 3737e, V.A.T.C.S. is what is referred to as the Business Record Act. Every kind of regular organized business activities is admissible in evidence, providing a proper predicate has been laid or a foundation has been laid for admission. In the trial of this case there was no evidence that the prior illnesses were the cause of the pain and suffering with which Mrs. Love was complaining at the time. It would have been necessary to plead and prove such prior to the offer of evidence and records. 23 T.J.2d 497, Sec. 339; 32 C.J.S. Evidence § 682 (1), p. 894. When the records are offered in evidence it must be under pleading and proof that they were made in the regular course of business at or near the time the act or event of condition is recorded or reasonably soon thereafter. The records are admissible in evidence after a *proper predicate* has been laid or a *foundation has been made* therefor, even though the records may be hearsay to the objecting party. The insurer has the burden of pleading and proving that the injured party's incapacity was due *solely* to former disease or former injury. Texas Indemnity Insurance Co. v. Desherlia, CCA, 237 S.W.2d 715, N.W.H.; Hartford Accident & Indemnity Co. v. Gant, CCA, 346 S.W.2d 359, and Zellarbach v. Associated Emp. Lloyds, CCA, 200 S.W.2d 653. To admit these records in evidence and permit the jury to take them in the room with them without such pleading and proof no doubt resulted in injury to Mrs. Love. The points are sustained.

By points 15 and 16 appellants complained of the error of the judgment because of the undisputed evidence and stipulation between the parties showing that Mrs. Love was totally and permanently disabled at least until Dec. 5, 1962, or sometime thereafter, and the verdict of the jury is contrary to the overwhelming weight of the evidence and is clearly wrong. Much has been written about the stipulation of the parties and payment of workmen's compensation, but we will not discuss that here. The evidence shows (by appellee's witness, Dr. Gunn), that when a person has a disc removed the person is not able to go back to work anywhere from 6 to 12 months, or 8 or 10 months after surgery. We will quote a question and answer from the Statement of Facts, wherein Dr. Gunn testified as follows:

"Q. Doctor, assuming there was surgery June 23, 1962, upon Mrs. Love's back, what period for recuperation and recovery is normal?

"A. Usually, depending on the patient and the type job, usually we let them go back to work from six to twelve months. This is depending on the job, I mean, if it is an operation job, with the removal of a disk, some people go back in eight or ten."

This evidence was offered on the direct examination of the attorney for appellee.

Mrs. Love testified at the time of the trial that she could not hold the job down that she was doing at the time of the injury. She testified that she could not do more than 50% of the work she did before. Other witnesses verified this testimony. See the following cases: Texas Employers Ins. Ass'n. v. Musick, CCA, (1961) 349 S.W.2d 619, N.W.H.; Traders & General Ins. Co. v. Harper, CCA (1940) 140 S.W.2d 593, er. ref.; United States Fidelity & Guaranty Co. v. Camp, CCA (1963) 367 S.W.2d 952, Wr. Ref., N.R.E.; Griffin v. Superior Ins. Co. (1960) 161 Tex. 195, 338 S.W.2d 415; Buss v. Robison, CCA (1952) 255 S.W.2d 339, W.R., N.R.E.; Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 951. The points are sustained.

For the purpose of passing on all the points, we will hold that appellant's points 5, 6, and 7 are without any merit and they are overruled. The judgment of the trial court is reversed and the cause is remanded.