**UTICA MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Margarette Lee (Hash) RITCHIE, Appellee.**

**No. 16170.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 11, 1973.

Chilton Bryan, Lowell T. Cage, Houston, for appellant.

G. Robert Friedman, Houston, for appellee.

PEDEN, Justice.

Workmen's compensation case. The insurance carrier concedes that the appellee, Margarette Lee Hash Ritchie, injured her back on or about June 16, 1969, while in the course and scope of her employment as a manager of an apartment project. Judgment was entered based on these special issues and findings:

"1. Was the plaintiff's injury on June 16, 1969, a producing cause of any total disability?

"Answer 'yes' or 'no': YES."

"If it was, then answer (a) and (b)

"(a) Give the beginning date by stating the month, day and year.

"Answer: JUNE 16, 1969."

"(b) State the duration by answering 'Permanent' or by giving the number of weeks.

"Answer: 401 WEEKS."

"2. Was the plaintiff's injury on June 16, 1969, a producing cause of any partial disability?

"Answer: 'yes' or 'no': NO."

Appellant's first four points of error assert that there was no evidence and insufficient evidence to support the jury's finding of total and permanent disability and that the jury finding in response to Issue 1b was against the great weight and preponderance of the evidence.

The appellant admits that the injury to the appellee's back was the producing cause of some total disability but denies that its duration was or will be permanent. It also concedes that the appellee may be presently suffering from some partial disability, and says that at least an affirmative jury answer to Special Issue No. 2 would have been supported by some evidence.

■ In considering "no evidence" points we consider only the evidence and inferences tending to support the jury findings and disregard all evidence and inferences to the contrary; in evaluating points stating that the evidence is factually insuffi-

cient, we consider all the evidence. Garza v. Alviar, 395 S.W.2d 821 (Tex.1965).

The appellee sustained the back injury in question while attempting to lift heavy furniture in a unit of an apartment complex which she managed. She was immediately taken to the emergency room of a hospital by her field supervisor and there was x-rayed and given injections. Appellee was admitted to the hospital and was later transferred to another hospital where she was placed under the care of Dr. C. L. Mc-Collum, an orthopedic surgeon. His services were obtained by the appellee's employers and his bill was paid by them. Appellee was confined in the diagnostic hospital as an inpatient from four to five weeks and remained in traction for the duration of her convalescence there. She was given medication, underwent therapeutic heat treatments, traction and leg exercise during the period of her hospital confinement. Appellee described the leg exercise ministered to her by Dr. McCollum in the hospital and thereafter in his office as being very painful.

The only witnesses who testified were the appellee, her mother and Dr. Mc-Collum.

Dr. McCollum testified by deposition, corroborating the testimony of appellee relative to the nature of her treatment, hospital confinement and the probable nature of the accident which produced her injury. He related that his objective findings on the date of appellee's first examination included muscle spasm, suspected impaired sensation along the medial border of the right ankle, and the absence of reflexes at the knee and ankle. Dr. McCollum explained that spasm can be caused by the injury to the muscle itself, or it can be caused by irritated nerves supplying the muscle. He was of the opinion, based on the results of a straight leg raising test performed on her, that appellee had sustained a back injury of indeterminate extent. Her condition was then diagnosed as acute lumbo-sacral strain. Her progress in the hospital was described as slow.

After the last of several follow-up office visits subsequent to her release from the hospital, Dr. McCollum diagnosed appellee's condition as chronic lumbo-sacral strain. Appellee's most recent examination by Dr. McCollum was made on October 10, 1972, some 174 weeks after she was injured. He testified that at that time appellee's condition was related to the original injury, that she would probably have difficulty working and that it would be virtually impossible for her to lift heavy objects.

Dr. McCollum stated:

"She should limit herself so far as squatting, stooping, climbing stairs, lifting heavy objects. She would be instructed to abstain from long car trips. Anything that would require any stress or strain, lifting heavy objects, or undue positions."

He said he did not know whether appellee's condition was permanent, or how long it would last, but that in light of the fact that her condition had persisted almost two years after her injury (actually, it was almost 3½ years), she was likely to have continued difficulties. She had shown very little improvement during that period. He said that if she continues to have this degree of trouble this long after her injury, he would say she is likely to have continued difficulties, but whether it is permanent, or how long it will last, he doesn't know. Normally a strain lasts only from six to ten weeks.

Appellee's mother, Mrs. Edwards, testified that she came to stay with her daughter temporarily in the fall following her release from the hospital to take care of appellee. Her stay at appellee's home in Highlands was interrupted from time to time.

Mrs. Edwards testified that after she had been there several days, her daughter's condition improved enough for her to get

up and around. Mrs. Edwards never knew her daughter to complain of back problems prior to her injury nor of her having any difficulty in moving about the house. She stated that appellee was confined to the bed or couch during her periodic visits.

Appellee testified that she gets "catches and things, and . . . can't do laundry and sweeping and waxing, mopping, and things of that sort. Just tears me up." She is no longer able to stoop over as she did prior to her accident and she has to be very careful climbing stairs. She can no longer sew nor is she able to sit for long periods of time and walking and standing for periods of time "give me fits", causing numbness in her legs, especially after doing household chores. She testified that she possibly feels some better than when Dr. McCollum was treating her, but not much.

Appellee admitted that she had not worked subsequent to the date of her injury with the exception of a brief and unsuccessful attempt at window washing only several months prior to trial. She had engaged in both the physical labor and supervisory ends of the window washing enterprise but was forced to terminate this venture as a result of a lack of good help and of her inability to sleep which resulted when she performed the window cleaning herself.

Appellee testified that she is a licensed beautician as well as an L.V.N. and that both licenses are current but that she has not actively engaged in either of these occupations for a number of years. She further testified that she had been a store manager, and had been engaged in "horse trading" but has not engaged in either since the date of her injury. She described the physical work she did as apartment manager, including the moving of furniture, cleaning apartments and much standing and walking.

She testified that except for her attempt to go into the window washing business she has not done any work since June 16, 1969 because the standing and walking that would be required cause her such pain and resulting nervousness that she has not been able to work.

■ We think no useful purpose would be served by a more complete review of all the evidence in this case. We have carefully examined all of it and conclude that it fully supports the jury's finding that the appellee's total disability would last for 401 weeks.

■ There is no fixed rule of evidence by which a claimant is required to establish the fact that he has suffered injury that has caused permanent total disability. See Associate Justice Ewing Werlein's discussion in Connecticut Indemnity Company v. Henson, 388 S.W.2d 300 (Tex.Civ.App. 1965, no writ), of Texas law relative to proof which supports a jury finding of permanent disability.

■ In the absence of affirmative testimony, either lay or medical, on the issue of permanency of disability, the fact of permanency may be revealed by other facts and circumstances from which the jury may reasonably resolve the issue and this is true even though such evidence is contradicted by the testimony of medical experts. Texas Employers' Insurance Ass'n v. Washington, 437 S.W.2d 340 (Tex.Civ. App.1969, writ ref. n. r. e.). In our case, the medical expert's testimony tended to support the finding, not contradict it.

Having sustained the findings that the appellee's disability would last for 401 weeks, we need not consider appellant's points of error asserting that the evidence did not support the negative finding as to partial disability.

Appellant complains in Points of Error Nos. 8 through 11 that the trial court erred in failing to submit the following requested special issues:

"If you have answered Special Issue No. _____ 'We do' and only in that event answer:

## SPECIAL ISSUE C

"What period of time do you find from a preponderance of the evidence, in days, months, or years, the excessive weight of Margarette Lee Hash Ritchie has delayed a normal recovery, if it has?

"Answer by stating the number of days, months, or years if any."

## SPECIAL ISSUE D

"Do you find from a preponderance of the evidence that the excessive body weight of Margarette Lee Hash Ritchie aggravated her injury condition, if any you have found on and following June 16, 1969?

"Answer: 'We do' or 'We do not'."

"If you have answered Special Issue No. _____ 'We do', and only in that event then answer:

## SPECIAL ISSUE E

"In what length of time do you find from a preponderance of the evidence Margarette Lee Hash Ritchie would have normally recovered from her injury of June 16, 1969, if her injury condition had not been aggravated by her excessive body weight, if you have so found?

"Answer by stating the number of days, months or years, if any."

It is the contention of the appellant that the refusal of the trial court to submit these requested special issues to the jury deprived it of the "injurious practices" defense provided for in Sec. 4 of Art. 8307, Vernon's Ann.Tex.St.

■ Whether maintaining or failing to lose excessive weight after sustaining a compensable injury constitutes an "injurious practice" within the purview of Sec. 4 of Art. 8307, V.A.T.S., is indeed a novel question and apparently has not been pass-ed on by the appellate courts of this State. The pertinent provision of Art. 8307, Sec. 4 is:

"If any employee shall persist in insanitary or injurious practices which tend to either imperil or retard his recovery, or shall refuse to submit to such medical or surgical treatment, chiropractic service or other remedial treatment recognized by the State, as is reasonably essential to promote his recovery, the board may in its discretion order or direct the association to reduce or suspend the compensation of any such injured employee. No compensation shall be reduced or suspended under the terms of this Section without reasonable notice to the employee and an opportunity to be heard."

The appellee is 5 feet 3 inches tall. She weighed about 235 pounds at the time of her injury and her weight had risen to 262 pounds at the time of the trial.

We do not consider that the appellee's failure to lose weight or her gaining of additional weight amounts, under the evidence in this case, to her persisting in injurious practices as contemplated by the act. One who persists in a course of conduct does so resolutely in spite of warning or opposition. We find nothing in the record to indicate that the appellee was able to control her weight, that her failure to do so was a result of any willful action on her part or that she refused to lose weight; she testified without contradiction that she had tried to do so without success.

■ There are other reasons why we believe the trial court did not err in refusing the requested issues. Appellant argues that it pleaded the defense of injurious practices by this allegation:

"Pleading further, and in the alternative, cross-defendant would show that if the cross-plaintiff has suffered any disability or loss of wage earning capacity, which is not admitted but is denied, such

disability or loss is a result of injuries and/or compensable injuries, diseases and general body and physical conditions occurring on or existing before or after June 16."

Such pleading does not give fair notice of reliance on the defense of injurious practices. Texas Employers Insurance Association v. Roberts, 281 S.W.2d 104 (Tex. Civ.App.1955, no writ).

Further, the statute requires that the employee must be given reasonable notice before the injurious practices defense is available. In our case the appellee admitted that several doctors advised her to lose weight, but there is no evidence in the record that she was advised by anyone that her recovery would be imperilled or retarded if she failed to do so. In Argonaut Underwriters Insurance Company v. Byerly, 329 S.W.2d 937 (Tex.Civ.App.1959, writ ref. n. r. e.), the court stated:

"Appellant properly pleaded the issue, but we do not believe the evidence raises it. No doctor had informed appellee that he was doing or failing to do anything that would hinder his recovery, while the claimant was repeatedly so informed in the case of Goff v. Texas Emp. Ins. Ass'n, Tex.Civ.App., 278 S. W.2d 326, relied on by appellant. It is the view of this court that the rule set forth in Texas Employers Ins. Ass'n v. Galloway, Tex.Civ.App., 40 S.W.2d 973, to the effect that in order to raise the issue of insanitary or injurious practices on the part of the injured employee which tends to either imperil or retard recovery of his injury within the meaning of the quoted section, it should be shown that he was requested to refrain from such practices and his refusal to do so. Texas Employers Ins. Ass'n v. Downing, Tex.Civ.App., 218 S.W. 112; Texas Employers Ins. Ass'n v. Roberts, Tex.Civ.App., 281 S.W.2d 104."

We affirm the judgment of the trial court.