The FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant,

v.

Charlie SHUBERT, Appellee.

No. 1487.

Court of Appeals of Texas, Tyler.

Jan. 6, 1983.

Rehearing Denied Feb. 3, 1983.

Richard L. Scheer, Fillmore & Associates, P.C., Fort Worth, for appellant.

Mark Huffman, Dallas, for appellee.

COLLEY, Justice.

This is a worker's compensation case. Appellant insurance company appeals from the trial court's judgment awarding appellee benefits for total and permanent disability based on the jury's findings that appellee incurred an occupational disease on November 4, 1976, which was a producing cause of appellee's total and permanent disability from that date.

Twenty-six points of error are presented by appellant in its brief. First point complains of the trial court's definition of "occupational disease" in its charge to the jury. The definition of "occupational disease" contained in the court's charge conforms with the provisions of § 20 of art. 8306, V.A.C.S.[1] and is correct, Leal v. Emp. Mut. Liab. Ins. Co., 605 S.W.2d 328 (Tex. Civ.App.—Houston [1st Dist.] 1980, reh. den., no writ); however appellant argues that in light of the state of the pleadings and evidence in the case, that the trial court should not have included in the definition of "occupational disease" the following language: "an occupational disease shall also include damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment; . . . ." Appellant would have us divide the occupational diseases defined in the statute into two classes, to-wit: one which is produced and results from repetitious physical traumatic activities, and the other a "classic" disease. No authority is cited by appellant

1. References are to Vernon's Annotated Civil Statutes unless otherwise indicated.

in support of such contention, nor do we find any authorities to such effect. Appellant's first point is overruled.

Appellant urges in its points of error numbers 2 through 9 inclusive, that appellee failed to either prove conclusively or secure a jury finding that he gave timely notice of injury to his employer or to the appellant, and that he filed his claim for compensation within six months after the first distinct manifestation of his occupational disease as is required by § 4a of art. 8307, V.A.C.S. The decision on these eight points turns on the "date of the cumulative injury" which is governed by the provisions of § 20 of art. 8306, V.A.C.S., reading in pertinent part: "... the date of the cumulative injury shall be the date disability was caused thereby." The last quoted language has been held to mean the date that any compensable disability was caused thereby. *Home Insurance Co. v. DeAnda,* 599 S.W.2d 124 (Tex.Civ.App.—Eastland 1980, reh. den.) rev. on other grounds 618 S.W.2d 529 (Tex.1980). Although this point was not reached by the Supreme Court, i.e., the Supreme Court did not approve the holding of the Court of Civil Appeals in *DeAnda* interpreting such language, we believe that is the plain meaning of § 20 of art. 8306, and we so hold.

The parties stipulated, as is admitted by appellant in its brief, that appellee gave notice of injury to his employer on November 23, 1976, and filed his claim for compensation within six months of November 4, 1976, and that worker's compensation benefits were paid to appellee from November 4, 1976, through May 28, 1980, in the total amount of $14,322.00.

The jury found in response to special issues submitted (1) that appellee had or has an occupational disease (2) arising out of and in the course of his employment (3) which was a producing cause of total incapacity, (4) that the beginning date of such incapacity was November 4, 1976, and (5) that such total incapacity was permanent. No objections were made by appellant to the submission of such issues.

Appellant claims by his tenth point of error that the evidence is insufficient to support the jury's answer to Special Issue No. 4, that the beginning date of total incapacity was November 4, 1976. Appellant's argument on points 2 through 9 are inherently founded on the premise that the evidence conclusively establishes that appellee incurred an occupational disease in June 1972 arising out of his employment which produced the compensable disability (albeit temporary) which continued and is the same occupational disease as the one appellee now seeks compensation for by this cause, and, that appellee, having failed to prove conclusively or secure a finding from the jury that he gave the notice of injury and filed his compensation claim timely using June 1972 as the date of injury, cannot recover in this action because the trial court had no jurisdiction.

Thus, it appears to us that disposition of appellant's tenth point will control our decision on points 2 through 9. Since point 10 alleges factual insufficiency of the evidence to support the finding made by the jury in response to Special Issue No. 4, it is necessary to discuss in some detail the evidence adduced at the trial.

The record reflects that appellee is an uneducated, illiterate, white male, age 51 (at time of trial). Appellant worked for Curtis Mathes a short time in the early 1960s, then left and later returned to work in the "foam department" on June 17, 1971. Appellant's job in the foam department involved applying a certain chemical which formed a foam or hard insulating backing to T.V. cabinet parts. Appellee continued to work in that job according to his testimony for five or six months but, according to his supervisor, for approximately two and one-half months during that period of employment was exposed to vapors and fumes from the foam chemical. In December 1972 or thereabout he consulted Drs. Haynes and Risko for examination and treatment for a breathing difficulty which was apparently distressful in the medical sense. Appellee was hospitalized by Dr. Risko for approximately two weeks and then was off from work for six additional weeks during which

time he received treatment and care from Dr. Risko primarily. Thereafter he was released by Dr. Risko to go back to work and worked regularly for Curtis Mathes at its plant in Athens, Texas, and was rewarded for his perfect attendance at work by bonuses paid him during the calendar years 1975 and 1976.

On November 4, 1976, appellee became unable to work because of a sudden occurrence of a breathing problem. During the period of time from the date appellee returned to work in 1972 until November 4, 1976, no complaint was made by his superiors regarding the quality of appellee's work as a tennon machine operator, sawing wood and particle board for T.V. cabinets for his employer. The evidence shows that appellee was subjected to a work environment from 1972 to November 4, 1976, in which there was heavy concentration of air-borne dust from his saw blades, as well as other noxious fumes, vapors and high temperature ranges. Since appellee did not respond to treatment after his 1976 disability he was referred by Dr. Risko to a specialist, Dr. Rogers. Dr. Rogers treated appellee for the ensuing years from November 4, 1976, until the trial below. Dr. Rogers appeared as a witness for the appellee at the trial.

The evidence is undisputed that appellee was diagnosed as suffering from asthmatic bronchitis by Dr. P.T. Tilman, a seventy-four-year-old family practitioner, in December 1962. Dr. Tilman, testifying for the appellant, prescribed medication for the appellee to suppress his coughing, but that was the extent of his treatment of appellee.

Dr. Rogers testified that the cause of appellee's disability was "his exposure to noxious environment agencies including temperature, fumes and dust," and when Dr. Rogers was asked on cross-examination whether or not appellee's asthmatic bronchitis was directly related to the appellee's disability, he answered in effect that it was not. Dr. Rogers further testified, in effect, that appellee's disability was caused by the environmental exposure at his job site, although his intrinsic asthmatic and history of smoking cigarettes were "factors that were there and were a part of his illness." In further testimony Dr. Rogers stated with reference to the cause of appellee's disability that the asthma and smoking did not produce any disability and that no disabling lung problem was presented until appellee was exposed to his work environment at Curtis Mathes.

A careful analysis of all of Dr. Rogers' testimony reveals that while he acknowledged the long history of cigarette smoking by appellee and appellee's affliction with intrinsic asthma, he attributed no specific contribution thereof in producing appellee's disability. Dr. Rogers testified positively that plaintiff's disability was the result of repeated exposure to dust and fumes and that such disability occurred on November 4, 1976, and was total and permanent. Dr. Rogers expressed his medical opinion that the occupational disease incurred by appellee was not the result of appellee's comparative obesity. Dr. Roger's final diagnosis of appellee's problem was "chronic obstructive pulmonary disease."

The evidence further reflects that appellee's medical and hospital expenses incurred in 1972 were paid in part at least, by a group health insurance company called United Furniture Workers Insurance Company. Apparently the group was composed of members of the United Furniture Workers Union of which appellee was a member.

The evidence further establishes that Dr. Haynes was the first doctor who saw appellee after his 1972 illness occurred and Dr. Haynes diagnosed appellee's condition as asthmatic bronchitis.

It is undisputed that the appellee gave no written notice of injury to his employer and filed no claim for compensation based on the 1972 occurrence; however, the evidence does show that appellee's employer, Curtis Mathes, had actual knowledge of the illness sustained by the appellee in June 1972 in that the appellee testified positively about giving notice to his supervisor in June 1972 by getting permission to leave to see the doctor when he had a distressful breathing problem. The evidence shows that appellee was hospitalized by Dr. Risko for two weeks

in June 1972 and was off work for an additional six weeks, making a total absence from work of eight weeks by the appellee as a result of the illness sustained by him in 1972. The evidence shows that the appellee's supervisor was told what the problem was in June 1972 and that the appellee was going to see a doctor.

Appellee's testimony was somewhat confused as to whether or not he was claiming a work-related injury in June 1972 or not. The record is clear that no claim was filed and no compensation was paid to the appellee as a result of his hospitalization and medical treatments in 1972 for the breathing problem he had at that time. Based on this record we are of the opinion that the jury could have reasonably concluded that the appellee's illness in June 1972 was caused by asthmatic bronchitis and was not related to his work environment and that the jury's finding that appellee's disability began November 4, 1976, is amply supported by the evidence and therefore appellee's point 10 is overruled. Points 2 through 9 are likewise overruled.

■ In considering the appellee's testimony relating to the imparting of notice and knowledge to his employer Curtis Mathes of the 1972 episode of illness (breathing difficulties), we have applied the exception to the rule regarding evidence given by an interested witness explained by Justice Johnson in *Collora v. Navarro,* 574 S.W.2d 65, 69 (Tex.1978), and upon examination of the record in this case finding that the appellee's testimony regarding the notification of his employer Curtis Mathes is so clear, and that its verity could easily have been tested and disputed by appellant at the trial, and thus on the facts established in this case by the record we deem his testimony proved knowledge on the part of Curtis Mathes of appellee's 1972 illness (breathing difficulty) as a matter of law and no issue was required to be submitted to the jury thereon. Rules 277 and 279, Tex.R.Civ.P.; *Sullivan v. Barnett,* 471 S.W.2d 39 (Tex.1971, reh. den.); 3 R. McDonald, Texas Civil Practice § 11.28.6 at 249.

■ Supporting our decision overruling appellant's points 2 through 9 inclusive, we additionally find that the evidence conclusively shows that Curtis Mathes had actual knowledge of appellee's breathing problem in June 1972 when it occurred as shown by the appellee's testimony (notice to supervisor who gave appellee permission to leave to see doctor coupled with eight week's absence from work). Curtis Mathes, by reason of such knowledge, had a statutory duty under this record by virtue of § 7 of art. 8307, V.A.C.S., as it existed prior to the 1979 amendment, to make an employer's report of injury to the Industrial Accident Board and, having failed to do so, the limitation period of six months provided in § 4a of art. 8307 was tolled by the provisions of art. 8307 7a; and, since the appellee filed his claim for compensation within six months from November 4, 1976, we conclude that the evidence shows as a matter of law that the claim was timely filed. *Commercial Ins. Co. of Newark, New Jersey v. Smith,* 596 S.W.2d 661 (Tex.Civ.App.— Fort Worth 1980, reh. den., no writ); *Vineyard v. Harvey,* 231 S.W.2d 921 (Tex.Civ. App.—Amarillo 1950, no writ).

Appellant claims by points Nos. 12, 13, 15, 16, 17, 19, 20, 21, 22, 23 and 24, that an affirmative answer to Special Issues Nos. 9, 11, 13, 15, 21 and 23 were established by the evidence as a matter of law. We do not agree. Here appellant is complaining of a failure of the jury to find facts embodied in appellant's affirmative defense under § 4 of art. 8307, V.A.C.S., quoted below, except where error pertaining to sole cause of disability is involved. After reviewing the evidence and disregarding all evidence, as well as all reasonable inferences therefrom, contrary to the findings of the jury in its answers to Special Issues Nos. 9, 13 and 21, we cannot conclude as a matter of law that the evidence establishes affirmative answers to such issues Nos. 9, 13 and 21. Points 12, 13, 15, 16, 17, 19, 20, 21, 22, 23 and 24 are overruled.

We find also after careful consideration of all evidence in this record, that the jury's negative answers to Special Issues Nos. 9,

13 and 21 are not so against the great weight and preponderance of the evidence to be manifestly wrong and unjust, and therefore appellant's points 14, 18 and 25 are overruled.

Additionally we are constrained to overrule all of appellant's points of error complaining of the action of the trial court in conditionally submitting Special Issues relating to the so-called "injurious practices" defense for additional reasons.

■ That portion of § 4 of art. 8307 reading,

*If any employee shall persist in insanitary or injurious practices which tend to either imperil or retard his recovery,* or shall refuse to submit to such medical or surgical treatment, chiropractic service or other remedial treatment recognized by the State, as is reasonably essential to promote his recovery, the board may in its discretion order or direct the association to reduce or suspend the compensation of any such injured employee. (Emphasis added.)

requires that before the insurance company is entitled to submit such issues, that the defendant is required to plead and prove, and it must be established by such proof, that the carrier or employer acting by authorized agents, medical doctors or otherwise, requested a physical examination of the worker; then, based upon that physical examination, requested that the worker refrain from any identified injurious practices and informed the worker that such practices will "imperil" or "retard" the worker's recovery; and the evidence must show that the worker refused to comply with the request. *Texas Employers Insurance Association v. Downing,* 218 S.W. 112 (Tex.Civ. App.—Amarillo 1919, reh. den., writ ref'd); *Traveler's Ins. Co. v. Mote,* 116 S.W.2d 427 (Tex.Civ.App.—Amarillo 1938, reh. den. writ dism'd agr.); *Texas Employers Insurance Association v. Galloway,* 40 S.W.2d 973 (Tex.Civ.App.—Austin 1931, reh. den., no writ).

In *Mote, supra,* a medical witness produced by the defendant insurance company testified that the injured plaintiff should have exercised to work off soreness and tenderness of certain muscles and tendons, and that worker's failure to exercise properly resulted in continued soreness and tenderness in such muscles and tendons. Apparently the medical witness did not examine the plaintiff. The insurance company failed to request a physical examination of the worker, and the trial court refused to submit a special issue inquiring whether or not the disability sustained by the worker would have been "removed" by the exercise prescribed by the medical witness. In overruling the insurance company's complaint that the trial court erred in refusing to submit such issue, the court in construing § 4 art. 8307, V.A.C.S., pointed out that before the insurance company would have been entitled to a submission of the so-called injurious practice defense, it would have been required to request a physical examination of the worker by a medical expert for purposes of determining whether or not such worker was engaging in "injurious practices" which tended to imperil or retard his recovery; and if based on proper circumstances and evidence (and it would appear that this would mean based on reasonable medical probability, which warrants medical advice or a request by the medical doctor to a worker that he refrain from engaging in any such practices) the medical doctor advises and informs the worker that if he does not refrain from doing so that he will imperil or retard his recovery; and then if the worker continues or persists in engaging in such injurious practices or, stated another way, refuses to abide by the request, only then the defense afforded by the statute above quoted would be available to the insurance company.

Appellant in its brief has cited *Goff v. Texas Employers Insurance Association,* 278 S.W.2d 326 (Tex.Civ.App.—Fort Worth 1955) generally as authority as authorizing submission of the defenses afforded by § 4 of art. 8307, V.A.C.S. *Goff, supra,* is not controlling here because of two reasons: (1) the doctor requesting the worker in that case to desist from certain practices was the insurance company doctor who examined

the worker Goff; and (2) that doctor told him that he should discontinue the practice of continuing to wear a back brace, and by such action the predicate had been laid to authorize a submission of such defense. This is not true in the case before us.

■ Several cases construing § 4 of art. 8307 have erroneously assumed that the warning or request may come from the worker's own doctor, e.g. *The Miller Mut. Fire Ins. Co. v. Gilbert*, 462 S.W.2d 112 (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.) and *Utica Mut. Ins. Co. of Texas v. Ritchie*, 500 S.W.2d 879 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ). Liberal construction of the provisions of the Worker's Compensation Act is given in favor of the workman. *Hargrove v. Trinity Universal Insurance Co.*, 152 Tex. 243, 256 S.W.2d 73 (1953, reh. den.); *Miears v. Industrial Accident Board*, 149 Tex. 270, 232 S.W.2d 671 (1950, reh. den.). In giving such construction to the provisions of § 4, art. 8307 above quoted, we construe its provisions as requiring the appellant to have requested and procured a medical examination of appellee made by medical experts selected by them, due to the nature of the occupational disease, who, based on that examination and reasonable medical probability, requested the appellee to stop smoking cigarettes and to lose weight, and at the same time clearly informing appellee that his continued smoking of cigarettes and failure to lose weight would "imperil or retard" or otherwise hinder or prolong his disability. To otherwise construe § 4 of art. 8307 in this case would violate the liberal rule of construction adopted by the courts of the Worker's Compensation Law enunciated in *Miears, supra*, to the effect that the courts should not supply by implication any limitations on the rights of the workman to recover compensation not found in the language of the act itself.

■ We now address the claim of appellant that appellee's continued exposure to his work environment constituted an affirmative defense under § 4 of art. 8307. Giving liberal construction to § 4 of art. 8307, we hold that such section does not

afford a defendant any defense concerning a dangerous or hazardous work environment. To permit such as an affirmative defense as an "injurious practice" under § 4 of art. 8307, even if the proper predicate were laid therefore, would deny a worker his right to prosecute his claim for compensation for an occupational disease incurred as contemplated by § 20 of art. 8306 " . . . arising out of and in the course of employment . . . ." Also to permit such defense would be destructive of the worker's right to recover for occupational diseases in general and we do not attribute any such intention to the Legislature in its enactment of the Worker's Compensation Law.

Our holding that exposure to work environment is not within the scope of § 4 of art. 8307 does not leave the subscriber or the insurer without a remedy. Section 12a of art. 8306, V.A.C.S., reads as follows:

If the injured employee refuses employment reasonably suited to his incapacity and physical condition, procured for him in the locality where injured or at a place agreeable to him, he shall not be entitled to compensation during the period of such refusal, unless in opinion of the board such refusal is justifiable. This section shall not apply in cases of specific injuries for which a schedule is fixed by this law.

The affirmative defense afforded the subscriber or the insurer by the provisions of the above-quoted § 12a are not applicable to this case for many reasons, the most significant of which are (1) there was no evidence to show that any attempt was made by the employer to relocate the appellee Shubert, and (2) no refusal by the employee to assent thereto. Further, appellee, upon the incurrence of his total and permanent disability as shown by the evidence from the occupational disease on November 4, 1976, never returned to work at Curtis Mathes.

Appellant argues by his point No. 25 that the jury's answer to Special Issue No. 21 is against the great weight and preponderance of the evidence, and while we have carefully reviewed all the evidence, and have concluded that the answer of the jury

is not against the great weight and preponderance of the evidence so as to be unjust and wrong. Nevertheless, we have already disposed of this point by our holding above that "exposure to work environment" is not within the scope of § 4 of art. 8307, V.A.C.S., and the issue should not have been submitted.

■ Finally, by its twenty-sixth point appellant alleges that the jury's answer to Special Issue No. 20, that the percentage of appellee's disability caused by the occupational disease was 100%, was not supported by sufficient evidence. We have set forth in this opinion a fair synopsis of the evidence in sufficient detail to show the basis of our decision on this point. Most of the evidence supporting the jury's response came from Dr. Rogers, and while opinion evidence is not conclusive, the jury is entitled to interpret the evidence and the opinion of the expert. *Employers Commercial Union Ins. Co. v. Schmidt,* 509 S.W.2d 398 (Tex.Civ.App.—Eastland 1974, reh. den.) writ ref'd n.r.e. 516 S.W.2d 117 (Per Curiam).

We find that the jury's answer to Special Issue No. 20 is supported by sufficient evidence of probative value and so overrule point 26.

Appellee presents two cross-points of error complaining of the trial court's action in sustaining appellant's special exceptions to paragraphs XIII, XIV, XV, XVI AND XVII set forth in appellee's first amended original petition, which reads:

### XIII

Plaintiff would show that though often requested to pay disability compensation benefits, to which Plaintiff is clearly entitled, and which were paid by Defendant to Plaintiff for more than three years from the date of his injury, Defendant has failed and refused to pay the same since the date of filing of this lawsuit. As a result of such refusal and failure to pay, Defendant has breached its duty of good faith and fair dealing owed to Plaintiff. The conduct of Defendant has been oppressive and in bad faith in that it has willfully and deliberately committed the following tortious acts and omissions:

1. Refusing and failing to pay disability compensation benefits to Plaintiff when Defendant knew that liability for said benefits was reasonably evident;

2. Refusing and failing to pay disability compensation benefits to Plaintiff when Defendant knew that Plaintiff's claim was valid;

3. Refusing and failing to provide a reasonable explanation of the basis relied upon in the policy of insurance, in relation to the applicable facts, for the denial of Plaintiff's claim for compensation;

4. Withholding payments from Plaintiff knowing Plaintiff's claim for benefits under said insurance policy to be valid;

5. Failing to reasonably and promptly investigate and process Plaintiff's claim for compensation benefits;

6. Not attempting in good faith to effectuate prompt, fair and equitable payment of Plaintiff's claim for compensation benefits where Defendant's liability has become reasonably clear.

By the allegations made by the plaintiff in paragraphs XIV through XVII, the appellee alleges he suffered mental anguish and suffering as a result of the conduct alleged against the appellant to his damages in the sum of $60,000 actual damages and $200,000 in punitive damages.

Appellee does not complain on appeal that the trial court failed to afford him an opportunity to amend his pleadings to which the exceptions were sustained, indeed, the record is void of any reference to such a complaint by appellee. So that is not at issue here. *Ainsworth v. Homes of Saint Mark,* 530 S.W.2d 877 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). Under the record here the trial court's action in sustaining the appellant's special exceptions was tantamount to a dismissal of the alleged cause of actions set forth in the pleadings referred to above. Thus in reviewing such action we are required to accept as true all of the factual allegations set forth in such pleadings in passing on appellee's

cross-points. *Rogowicz v. Taylor & Gray, Inc.,* 498 S.W.2d 352 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *Armendariz v. Bill Sears Supermarket No. 1,* 562 S.W.2d 529 (Tex.Civ.App.—El Paso 1978, reh. den., writ ref'd n.r.e.).

Appellant's special exceptions, which were sustained, alleged that the challenged allegations of the paragraphs mentioned above did not state a cause of action because the cause of action alleged thereby was precluded by the provisions of the Worker's Compensation Act and because the Act provided an exclusive remedy to appellee. The trial court struck such pleadings.

The law is clear that the Worker's Compensation Act exempts employers and their carriers from common law liabilities based on negligence or gross negligence with certain exceptions not material here. *Paradissis v. Royal Indemnity Co.,* 507 S.W.2d 526 (Tex.1974); *Castleberry v. Goolsby Bldg. Corporation,* 617 S.W.2d 665 (Tex.1981, reh. den.). But the Act does not exempt the employer or carrier from common law liabilities for intentional torts or injuries. *Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556 (1916); Art. I, § 13 Texas Constitution.

Testing the appellee's allegations under Rules 45 and 47 of the Texas Rules of Civil Procedure, we conclude that no intentional tort is alleged thereby, and that a liberal construction of such allegation shows merely that the appellee seeks to recover damages, both actual (mental anguish) and punitive, because appellant wrongfully denied further liability to appellee under the Worker's Compensation Act as manifested by its discontinuance of compensation payments following the filing of the compensation suit in the court below. Appellant had a right to make this decision and to suspend payments and deny further liability under the Worker's Compensation Law. *Southern Underwriters v. Schoolcraft,* 138 Tex. 323, 158 S.W.2d 991 (1942). And such denial of liability by the appellant did not deprive the appellee of his right of action to recover benefits under the Worker's Compensation

Law and the policy issued by appellant pursuant thereto. *Rodriguez v. Texas Employers Ins. Association,* 598 S.W.2d 677 (Tex. Civ.App.—Fort Worth 1980, reh. den., no writ).

Based on our analysis we find no error in the court's action and appellee's cross-points are overruled.

We affirm the judgment.