Trans Ins Co v. Hathcock 

















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-225-CV

     TRANSPORTATION INSURANCE COMPANY,
                                                                                              Appellant
     v.

     MAX F. HATHCOCK,
                                                                                              Appellee
 

From the 18th District Court
Johnson County, Texas
Trial Court # 119-91
                                                                                                    

O P I N I O N
                                                                                                    

      Transportation Insurance Company, Appellant and defendant in the trial court, appeals a
worker's compensation judgment in which a jury found that the claimant, Appellee Max F.
Hathcock, sustained an injury to his right foot which extended to and affected his back, resulting
in total and permanent incapacity as of May 30, 1989, and that the injury was a producing cause
of the total loss of use of the right foot. Appellant stipulated to the foot injury but maintained it
did not extend to his back and that it resulted in only temporary, partial incapacity. In seventeen
points of error Transportation challenges the sufficiency of the evidence to support the jury's
answers, the court's exclusion of evidence concerning Hathcock's other physical problems, and
its refusal to submit Transportation's requested question on its injurious-practice defense. We
will affirm the judgment.
SUFFICIENCY OF APPELLATE RECORD
      Although citing Rule 50(e), Transportation's threshold contention is that the judgment must
be reversed and the cause remanded for a new trial "because Volume V of the Statement of Facts
is incomplete and inaccurate." Tex. R. App. P. 50(e). We disagree and will proceed with the
merits of the appeal. After Hathcock agreed with Transportation's assessment of the
incompleteness of the record, we abated the appeal for a Rule 55(a) hearing in the trial court. See
id. 55(a). Following the hearing, a three-volume statement of facts and a per curiam order was
filed with this court, as well as a certification from the court reporter. Transportation does not
contend that any part of the record has been "lost or destroyed." See id. 50(e). Although
Transportation did not waive its point of error on the sufficiency of the appellate record, the
record reflects that the parties have agreed that the errors have been corrected. See id. 55(a). The
parties have agreed that no significant material testimony has been omitted and that the record
fairly and accurately reflects what actually occurred in the trial court. See id. Point one is
overruled. We will now consider the remaining substantive points of the appeal.
FACTUAL BACKGROUND
      On May 30, 1989, Hathcock, while employed as a truck driver for Brooks Products, crawled
beneath a truck in an attempt to free the brakes so that the truck could be moved. Hathcock
testified that, as he worked on the brakes, he was lying just in front of the rear dual wheels with
his left foot against the bottom of the truck and his right foot protruding from beneath the left side
of the truck. A forklift, loaded with approximately 8,000 pounds of large cement pipes stacked
four feet wide and seven feet tall and driven by another Brooks employee, Dwight Winslow,
approached the front of the truck under which Hathcock was working. According to Winslow,
the forklift was traveling parallel to the truck "a little faster than one would typically walk." 
Winslow stated that, when he was driving a forklift loaded to this extent, he could not see straight
ahead or over the load but would have to look out the side. With the forklift six to eight feet
away, Winslow saw Hathcock's right foot in the path of the forklift and slammed on the brakes. 
Winslow testified that it took him approximately eight and one-half feet to stop the forklift after
he initially saw Hathcock's foot. Although Hathcock testified that he was dragged some ten to
fifteen feet by the forklift, Winslow stated that the wheel of the forklift pushed Hathcock's foot
approximately four to six inches and that Hathcock had not been dragged ten to fifteen feet. He
said that when he climbed down from the forklift, he found Hathcock under the edge of the truck
bed in the process of sitting up. He also said that Hathcock was "yelling and screaming" before
he was able to bring the forklift to a stop and that he had to put the forklift in reverse and back up
before Hathcock could free his foot from the forklift. Although Hathcock was wearing heavy
work boots and socks the day of the accident, he had to undergo three different operations on his
right ankle following the accident. His renditions to treating physicians regarding the details of
the accident were consistent with each other and with his testimony at trial.
      In addition to the conflicting testimony concerning the details of the accident itself and how
far Hathcock was dragged by the forklift, and although the severe injury to his foot was apparent,
the evidence is conflicting as to (1) when Hathcock initially complained about his back after the
forklift incident, (2) whether the delay regarding complaints about his back was reasonable, and
(3) whether his back problems were caused by or related to the injuries he sustained in the forklift
accident.
      This case is governed by the prior workers' compensation statute. Tex. Rev. Civ. Stat.
Ann. art. 8306, et. seq. (repealed 1989). The Industrial Accident Board (now renamed the "Texas
Workers' Compensation Commission") based its award solely upon the injury to Hathcock's foot. 
The jury found that Hathcock's original foot injury extended to and affected his back; that his back
problems were a producing cause of "permanent" and "total" incapacity; and that Hathcock's
injury to his right foot resulted in the "permanent" and "total" loss of use of his right foot.
POINTS ON APPEAL
      In points two through six, Transportation contends that there is no evidence to support the
jury's findings that Hathcock's injury to his right foot extended to and affected his back; that the
injury to his right foot was or will be a producing cause of any total incapacity; that he sustained
permanent and total incapacity beginning May 30, 1989; that the injury was or will be a producing
cause of the total loss of use of his right foot; and that the injury was not a producing cause of any
partial loss of use of his right foot. In points seven through eleven, Transportation claims that the
evidence is factually insufficient to support those same findings. Point twelve asserts that the court
erred in precluding the company from questioning Hathcock about pre-existing conditions, while
point sixteen complains about the court's exclusion of medical testimony about other physical
conditions. Points thirteen, fourteen, and fifteen attack the court's rulings excluding certain
documents that the company offered as trial exhibits. Finally, point seventeen complains that the
court refused to submit issues on Transportation's injurious-practice defense.
STANDARDS OF REVIEW
      Before discussing the merits of the company's points, we will set forth the applicable
standards of review.
no evidence
      When the complaining party raises a "no-evidence" point and challenges the legal sufficiency
of the evidence to support a finding that favors the party who had the burden of proof on that
finding, the reviewing court must sustain the finding if, considering only that evidence and the
inferences which support the finding in the light most favorable to the finding and disregarding
evidence and inferences to the contrary, any probative evidence supports it. Holt Atherton
Industries, Inc. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992); Glover v. Texas Gen. Indem. Co., 619
S.W.2d 400, 401 (Tex. 1981); Miller v. Riata Cadillac Company, 517 S.W.2d 773, 777 (Tex.
1974). If there is more than a scintilla of evidence to support the finding, the no-evidence
challenge fails. Id. Evidence is no more than a scintilla when it is "so weak as to do no more than
create a mere surmise or suspicion of [the fact's] existence." Seideneck v. Cal Bayreuther
Associates, 451 S.W.2d 752, 755 (Tex. 1970) (citing Robert W. Calvert, "No Evidence" &
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361 (1960)). A no-evidence point can
only be sustained when the record reveals one of the following: (1) a complete absence of evidence
of a vital fact; (2) rules of law or evidence bar us from giving weight to the only evidence offered
to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or
(4) the evidence conclusively establishes the opposite of a vital fact. Juliette Fowler Homes, Inc.
v. Welch Assoc., 793 S.W.2d 660, 666 n.9 (Tex. 1990).
insufficient evidence
      In reviewing an "insufficient-evidence" point that challenges the factual sufficiency of the
evidence to support a finding that favors the party who had the burden of proof on that finding,
the reviewing court may set aside the finding only if a review of all the evidence, both for and
against the finding, demonstrates that the finding is clearly wrong and manifestly unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). Reversal could occur because the finding was based
on weak or insufficient evidence or because the proponent's proof, although adequate if taken
alone, is overwhelmed by the opponent's contrary proof. William Powers, Jr. & Jack Ratliff,
Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 519 n.11
(1991). In making a determination about the factual sufficiency of the evidence, we have a duty
to review the entire record. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).
admissibility of evidence
      The decision whether to admit evidence is a matter within the discretion of the court. 
Champlin Oil & Refining Co. v. Chastain, 403 S.W.2d 376, 389 (Tex. 1965). Preliminary
questions concerning admissibility of evidence are determined by the court. Tex. R. Civ. Evid.
104(a). This determination will not be overturned absent an abuse of discretion. Steenbergen v.
Ford Motor Co., 814 S.W.2d 755, 760 (Tex. App.—Dallas 1991, writ denied), cert. denied,
——— U.S. ———, 113 S.Ct. 97, 121 L.Ed.2d 58 (1992). Further, error may not be predicated
upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. 
Tex. R. Civ. Evid. 103(a). The test for determining whether an abuse of discretion has occurred
is, did the court act contrary to the guiding rules or principles? Stated another way, was the
court's action arbitrary or unreasonable? Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). 
The determination of whether a court abused its discretion is a question of law. Jackson v. Van
Winkle, 660 S.W.2d 807, 810 (Tex. 1983). 
      SUFFICIENCY OF THE EVIDENCE
      Points two through eleven attack the legal and factual sufficiency of the evidence to support
certain findings of the jury.
extension of injury
      Points two and seven assert that the evidence is legally and factually insufficient to support
the finding that Hathcock's foot injury extended to and affected his back. The ultimate issue for
the injured worker to establish in an extension case is whether the injury extended to and affected
other portions of the body, not whether the disability has extended to and affected other parts of
the body. Texas Employers' Insurance Association v. Wilson, 522 S.W.2d 192, 194 (Tex. 1975). 
If a specific injury extends to and affects portions of the body beyond that member, the worker
may recover general disability benefits. Western Casualty & Surety Company v. Gonzales, 518
S.W.2d 524, 525 (Tex. 1975). Pain alone is generally not sufficient to extend an injury to a part
of the body suffering pain but no physical damage. See Saldana v. Houston General Ins. Co., 610
S.W.2d 807, 811 (Tex. Civ. App.—Houston 1980, writ ref'd. n.r.e.). However, as will be
described, the evidence indicates Hathcock's lower back actually sustained physical damage and
caused him to experience symptoms beyond mere subjective complaints of pain as a result of the
foot injury. See So. Farm Bureau Cas. v. Aguirre, 690 S.W.2d 672, 676-77 (Tex. App.—Waco
1985, writ ref'd n.r.e.). In deciding whether an injury to a specific member of the body is a
specific or general injury, the full consequences of the original injury, together with the effects
of its treatment upon the general health and body of the worker are to be considered. See Western
Casualty & Surety Company, 518 S.W.2d at 525-26. To recover for a general injury, the injured
worker must prove that the specific injury has affected the body generally, causing incapacity, and
that the general incapacity was caused by an extension of the specific injury to some part of the
body other than the specific member. Texas Employer's Insurance Association, 522 S.W.2d at
194. 
      The record reveals that, following the forklift accident on May 30, 1989, Hathcock initially
complained of severe pain in his right leg on June 7. Although Hathcock saw his family
physician, Dr. Kiel, the same day as the accident for a job-related physical, the doctor's notes fail
to indicate that an accident had occurred or that Hathcock had sustained injuries to his foot and
ankle. Dr. Kiel testified, however, that he doubted the accuracy of his notes on that particular
day. He said that he would have undoubtedly examined Hathcock's extremities to some extent
before passing him on the physical. In early August 1989, Dr. Kiel referred Hathcock to Dr.
Feanny due to a non-healing ulcer on his foot. 
      The report of one of Hathcock's physical therapists describes pain from his mid-foot, up the
right leg and into his back on October 30. The physical therapist, Jeanne Snowdon of Kimbro
Medical Center, to whom Hathcock was referred by Dr. Feanny, stated that, at the time she first
saw Hathcock on October 30, he complained of severe foot pain extending up the back of the leg
and into the lower back, which she determined to involve vertebrae L5 and S1. She described his
extremely limited range of motion in the right leg and foot. Snowden indicated that Hathcock
complained of back pain and that such a serious injury could have involved his back. She stated
that the injury's causing the foot to turn to the side could indicate that a nerve extending off the
spine was being compressed, such as by a bone spur. She said that Hathcock's description of the
pain entailed the L5-S1 portion of the lower back. She also testified that she believed that
Hathcock was an honest person in describing his acute, almost constant pain. When asked to tell
the jury what caused Hathcock's back problem, Snowden replied that Hathcock had told her it was
caused by the forklift accident.
      Dr. Linden Dillen, an orthopedic surgeon specializing in foot and ankle orthoscopy, believed
that Hathcock suffered from a herniated disk in his lower back, which accounted for the electric-like sensation extending down the back of his entire right leg. He believed that Hathcock had back
problems when he initially saw him in his office after the accident on March 9, 1990. He noted
a possible herniated disk at that time in his examination notes. Dr. Dillen stated that, when
Hathcock described on a later date how he had sustained the injury to his foot, his description was
consistent with damage not confined to the leg by which he was dragged, but also extending to
other areas, including the back. Dr. Dillen indicated that the back would be the main secondary
target upon which he would focus. He further stated that leg pain in one or both legs is common
with a back injury, depending upon where the injury to the back is located. Dr. Dillen expressly
testified that the forklift accident caused Hathcock's back problems, but he was unable to
unequivocally say when Hathcock's back injury occurred. He testified that he could not tell
whether the disk herniated at the time of the original foot injury or developed later because of the
abnormalities of Hathcock's gait due to compensating for the severely incapacitated foot, but that
the back injury definitely occurred at one time or the other and that either was possible. The
doctor also testified that it really would not make much difference whether Hathcock had been
dragged ten to fifteen feet or just a few inches by the forklift, the key factor being the extent of
trauma to the foot and the leg. He further stated that the wrenching, twisting force of this type
of trauma dissipates much force in the foot and the leg. 
      Dr. Dillen said that his conclusion that the forklift accident and injury caused Hathcock's back
complaints was based upon his belief that Hathcock was open and honest with him—that they had
a very open relationship—and that Hathcock had never mentioned a back problem prior to the
forklift accident. Dr. Dillen affirmatively testified as to the cause or relationship of the forklift
accident and Hathcock's back problems.
      Dr. Dillen referred Hathcock to a neurologist, Dr. Charles Marable. Dr. Marable's records
show that Hathcock had a definite lower-back injury. A CAT scan revealed spondylosis of his
lower back. Dr. Marable recommended a lumbar myelogram to confirm a ruptured disk but was
not allowed to proceed with the test due to Transportation's refusal to pay for any additional
lumbar testing or treatment.
      Dr. Allen Kent, an orthopedic surgeon, testified that he first saw and examined Hathcock
approximately thirty months following the accident. Having examined Hathcock's back and lower
legs on November 1, 1991, Dr. Kent testified that he suffered a chronic lumbar sacral sprain and
strain with possible disk herniation. He testified that Hathcock suffered from spondylolisthesis
of the lowest lumbar vertebra with an associated spondylolysis. Dr. Kent explained that Hathcock
had a chronic "pull" of the supportive muscles and ligaments in his lower back and a possible
"slipped disk." He ordered x-rays, which revealed a slipped vertebra and a crack in the bone. 
He testified that Hathcock's injuries were total and permanent at the time of his examination. Dr.
Kent explained that Hathcock was not a likely candidate for back surgery because of his massive
obesity, but if he could lose a great deal of weight and strengthen his heart with some physical
therapy, he might return to his job as a truck driver.
      Dr. Kent also testified that Hathcock related (1) how the accident had occurred, (2) that he
had sustained deep abrasions on the right side and on the top of his foot, as well as various other
injuries, and (3) that he underwent multiple surgical procedures on his right foot and put no weight
on it for two to three months. Hathcock told Dr. Kent that after he began using crutches in order
to bear weight on the right foot and ankle, he noticed the severe electric-type shocks of pain from
his right leg radiating up into his lower back. Dr. Kent testified that the back injury that Hathcock
suffered is the type of injury that could cause this type of problem and that the only way to
eliminate the possibility that the forklift accident had caused the slipped disk and broken bone in
his lower back was to view back x-rays prior to the accident. He testified that, if Hathcock had
experienced no prior problems with his back, the accident could have caused the back problem in
its entirety or aggravated a prior problem that had not been symptomatic. He recalled from his
handwritten notes that, although Hathcock denied having had any prior lower back problems, he
did complain of having degenerative arthritis in both knees. Dr. Kent declined to testify as to the
extent or duration of the injury to Hathcock's ankle but said that the type of back injury and the
sensations radiating from the right leg are something one would expect to see shortly after the
accident, within two to three months, and that this particular kind of back injury is usually
characterized by centralized, lower back pain. Dr. Kent testified that he had not examined any
of Hathcock's other medical records. He stated that, with no prior history or symptoms, the
causal link was medically probable. Dr. Kent acknowledged on cross-examination that if the
forklift operator's story was correct—that Hathcock's foot was pushed by the forklift only a few
inches—he would find it more difficult to express a cause-effect relationship between a relatively
minor foot injury and a significant lower back problem such as Hathcock's.
      Dr. Lang, an orthopedic surgeon with no particular area of specialty, reviewed a portion of
Hathcock's medical records and, having never met Hathcock, based his opinions solely upon that
review. Dr. Lang stated that he saw no evidence of a connection between the original foot injury
and Hathcock's back problems. He testified that he believed the patient's symptoms and findings
to be localized, confined to the injury below the knee. Lang acknowledged that Hathcock was an
extremely obese man, weighing approximately 340 pounds with edema over his legs, and admitted
that he could not judge Hathcock's credibility from his review of the records. He stated that he
had not seen Dr. Kent's records and that his opinion relied heavily upon the information contained
in Dr. Dillen's report. Dr. Lang further stated that it is not common to experience tingling in
one's legs from a back injury—that back pain is more common than leg pain with a back injury. 
According to Dr. Lang's limited review of Hathcock's medical records, there was no mention of
back-related pain prior to March 20, 1990. Dr. Lang testified that back pain stemming from an
injury should begin within three to four months following the occurrence of the original injury,
and if onset of back pain occurs any later, he could not state in reasonable medical probability that
the back pain arose from the original injury. He stated that nothing was impossible, but that
reasonable medical probability had its limits. When questioned concerning Dr. Dillen's opinion
that "the mechanism of the [foot, ankle] injury could easily have caused primary back problems
. . . I would suspect that this would be consistent with a herniated disk," Dr. Lang indicated that
he had reviewed no records containing such an opinion and that he didn't review any of Dr.
Dillen's records dated after March 1, 1991. Dr. Lang was reminded by another of Dr. Dillen's
records that Hathcock had complained of back pain on March 20, 1990, approximately two weeks
after initially seeing Dr. Dillen on March 9, at which time an appointment with a neurologist to
have an MRI performed was scheduled.
      No evidence was introduced showing that Hathcock had suffered from a prior back problem
or complained about his back prior to the accident in question. Considering only the evidence
supporting the finding, there is more than a scintilla of probative evidence to support the jury's
finding that the injury to the foot extended to and affected Hathcock's back. See Holt Atherton
Industries, Inc., 835 S.W.2d at 84; Glover, 619 S.W.2d at 401; Miller, 517 S.W.2d at 777. 
Considering all of the evidence, this finding is not clearly wrong and manifestly unjust. See Cain,
709 S.W.2d at 176. The jury was entitled to believe Hathcock's account of how the foot injury
and the forklift accident had occurred, the doctors' opinions that the back injury was related to the
forklift accident, and Hathcock's own description of the back pain he began to experience and
continued to experience following the forklift accident. Thus, we find that the evidence is legally
and factually sufficient to have allowed the jury to conclude that Hathcock's original foot injury
extended to and affected his back. We overrule points two and seven.
producing cause—total incapacity
      Points three, four, eight, and nine assert that the evidence is legally and factually insufficient
to support the findings that the injury to Hathcock's right foot, as extended to his back, was or will
be a producing cause of any total and permanent incapacity beginning on May 30, 1989. The term
"total incapacity" does not mean an absolute disability to perform any kind of labor; it exists when
the employee cannot obtain and retain employment at the type of job he was performing when
injured. Commercial Ins. Co. of Newark, N.J. v. Puente, 535 S.W.2d 948, 950 (Tex. Civ.
App.—Corpus Christi 1976, writ ref'd n.r.e.); Gulf Ins. Co. v. Gibbs, 534 S.W.2d 720, 723-24
(Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.).
      Dr. Dillen testified that the injury to Hathcock's back occurred either at the time of the forklift
accident or as a result of the change in Hathcock's gait. Hathcock testified that he believes a
relationship exists between the accident and his back and that his back is permanently injured. He
stated that he had sustained no prior injuries. He has fallen several times since the accident
because his foot does not function correctly and he does not have complete control over it. 
      Regarding the medical testimony to support the jury's answers that Hathcock is totally and
permanently incapacitated as of May 30, 1989, Dr. Kent's report stated that Hathcock was totally,
physically disabled, and he so testified. He stated that, even if Hathcock could be considered a
suitable surgical risk (depending on considerable weight loss and on his heart), the surgery would
still result in permanent disability. Dr. Marable's reports and letters discussed Hathcock's 100%
disability. Dr. Lang acknowledged that Hathcock was a poor candidate for any type of back
surgery. 
      Considering only the evidence favorable to the finding, the trial court correctly denied
Transportation's motions for directed verdict and for judgment n.o.v. because the record reflects
legally sufficient evidence to support the jury's findings that Hathcock's injury was or will be the
cause of total and permanent incapacity beginning May 30, 1989. See Holt Atherton Industries,
Inc., 835 S.W.2d at 84; Glover, 619 S.W.2d at 84. Our examination of all the evidence, as
summarized above, fails to show that the finding is manifestly unjust. See Cain, 709 S.W.2d at
175. We overrule points three, four, eight, and nine.
producing cause—total, partial loss of use
      In points five and ten, Transportation asserts that there was no evidence or insufficient
evidence to support the jury's finding that Hathcock's injury was or will be a producing cause of
any total loss of use of his right foot. Transportation also argues in points six and eleven that no
evidence or, alternatively, insufficient evidence exists in the record to support the jury's finding
that Hathcock's injury was not a producing cause of any partial loss of use of his right foot.
      Because we have held in the above points that the evidence is both legally and factually
sufficient to support the findings on the extension of Hathcock's injury from his right foot to his
back and that total and permanent incapacity occurred on May 30, 1989, we do not reach these
points. When a worker sustains concurrent injuries, he receives compensation for only the injury
which produces the longest period of incapacity. Tex. Rev. Civ. Stat. Ann. art. 8306, § 12
(Repealed 1989). 
EVIDENTIARY RULINGS
      Transportation asserts in point twelve that the court erred in prohibiting the questioning of
Hathcock concerning his pre-existing conditions. Also related to Transportation's sole-cause
inferential-rebuttal defense, it urges in points thirteen through sixteen that the court erred in
sustaining Hathcock's objections to the introduction of exhibit nos. 4, 10A, and 11A and that it
also erred in excluding Dr. Kiel's testimony regarding Hathcock's other physical conditions. 
      The carrier has the burden of pleading and proving a sole-cause defense—that the injured
party's incapacity was due totally to prior disease or former injury. Love v. Travelers Insurance
Company, 395 S.W.2d 682, 685 (Tex. Civ. App.—Texarkana 1965, writ ref'd n.r.e.); Home Ins.
Co. v. Gillum, 680 S.W.2d 844, 847 (Tex. Civ. App.—Corpus Christi 1984, writ ref'd n.r.e.). 
For a pre-existing injury to prevent recovery, it must be the sole proximate cause of the injury in
question. Love, 395 S.W.2d at 685. An unrelated, pre-existing injury or disease will not preclude
a compensation claim for later disability unless the unrelated injury or condition is the sole cause
of the disability. Texas Employers' Insurance Assoc. v. Page, 553 S.W.2d 98, 100 (Tex. 1977);
Texas Employers' Insurance Association v. Beard, 390 S.W.2d 59, 60-61 (Tex. Civ. App.—Fort
Worth 1965, writ ref'd n.r.e.)     The jury in this case was given a general instruction regarding
"sole cause" as part of the instruction on producing cause. "Producing cause" was defined in the
charge as follows:
[A]n injury or condition which, either independently or together with one or more
injuries or conditions, results in incapacity, and without which such incapacity would not
have occurred when it did. There may be more than one producing cause of an
incapacity, but there can be only one sole cause. If an injury or condition was the sole
cause of an incapacity, then no other injury or condition could have been a producing
cause.

The pre-existing conditions from which Hathcock had suffered included poor eyesight,
degenerative knees, hypertension, cellulitis, pitting edema, and poor circulation. Although
Transportation admitted the injury to the right foot and ankle, it sought to establish that any loss
of use of Hathcock's right foot following the forklift accident was solely caused by his pre-existing
cellulitis, pitting edema, and poor circulation. The company also wanted to introduce evidence
indicating that, if Hathcock's foot injury extended to and affected his back, any resulting
incapacity was solely due to his poor eyesight, degenerative knees, hypertension and obesity, any
of which Transportation contends could have prevented Hathcock from returning to his previous
occupation as a truck driver. 
      The court prevented Transportation from questioning Hathcock regarding his prior history of
such problems and excluded the deposition testimony of Hathcock's family doctor, Dr. Kiel,
concerning his other physical conditions. When questioned in his deposition about these other
problems and whether they prevented him from working, Dr. Kiel answered, "It's at least
regarding those problems." This testimony was excluded by the court. 
      Exhibit No. 4, a letter from Dr. Kiel dated May 13, 1991, stated that Hathcock suffered from
numerous health problems, primarily "congestive failure, hypertension, and heart disease." Dr.
Kiel indicated that Hathcock "is very limited in his activity level, that he has not been able to work
now for sometime and will probably continue to be unable to work in the near future." Exhibit
10A consisted of Dr. Kiel's records which reflected Hathcock's prior treatment for the above-described conditions. Exhibit 11A consisted of Dr. Feanny's records which indicated Hathcock's
prior treatment for cellulitis and pitting edema. The court refused to allow Transportation to
cross-examine Hathcock concerning these conditions.
       Exhibit 4, written more than two years after the forklift accident, does not indicate that the
medical problems enumerated are the sole cause of his incapacity. See id. Dr. Kiel did not treat
Hathcock's work-related injuries. Neither Dr. Kiel's records nor Dr. Feanny's report reflected
any sole-cause evidence bearing upon Hathcock's incapacity. As previously stated, Hathcock
testified that he had experienced no prior back problems or pain before the accident, nor had he
undergone any prior treatment for a back-related condition. 
      The evidence excluded by the court fails to show that Hathcock's prior medical conditions
were the sole cause of his incapacity. Furthermore, the record is replete with evidence that the
forklift accident and resulting injuries were a producing cause of incapacity. Points twelve
through sixteen are overruled.
JURY CHARGE
       In point seventeen, Transportation argues that the court erred in refusing to submit its
requested questions on its injurious-practices defense. Transportation contended at trial that
Hathcock's failure to lose excessive weight constituted an "injurious practice" under the
compensation act. 
      The act provides that if an injured employee "persist[s] in unsanitary or injurious practices
which tend to either imperil or retard his recovery, compensation may be reduced by an amount
proportionate to the percentage of incapacity attributable to that practice." Tex. Rev. Civ. Stat.
Ann. art. 8307, § 4 (Repealed 1989). Transportation's burden was to allege and prove a request
to and a willful refusal by Hathcock to refrain from the practice which it contended to be injurious. 
See Austin Independent School District v. Maynard, 711 S.W.2d 377, 379 (Tex. App.—Austin
1986, no writ); Home Ins. Co., 680 S.W.2d at 847.
      The record reflects that only Hathcock's treating physicians—not Transportation's
doctors—advised him to lose weight to aid in his recovery. See Fidelity & Casualty Co. of New
York v. Shubert, 646 S.W.2d 270, 275 (Tex. Civ. App.—Tyler 1983, writ ref'd n.r.e.);
Commercial Ins. Co. of Newark, N.J. v. Smith, 596 S.W.2d 661, 666 (Tex. Civ. App.—Fort
Worth 1980, writ ref'd n.r.e.). Hathcock testified that he had had a weight problem all his life
and that he had been able to lose only approximately ten pounds after the accident though he
continued to diet and cut down to one meal a day. Nevertheless, the record fails to reflect
evidence that Hathcock's apparent inability to lose weight was willful and that he refused to lose
weight. See id; Utica Mutual Insurance Company v. Ritchie, 500 S.W.2d 879, 883 (Tex. Civ.
App.—Houston [1st Dist.] 1973, no writ). The evidence shows that he would lose weight at times
but then regain it. In addition, it was Hathcock's own doctors that urged him to lose weight;
Transportation did not obtain a physical examination in which Hathcock was advised to reduce. 
See Fidelity Casualty Co., 646 S.W.2d at 275. The trial court did not abuse its discretion in
refusing to include the injurious-practices question in the charge. Point seventeen is overruled.
      We affirm the judgment.
 
                                                                                     BILL VANCE
                                                                                     Justice

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed December 15, 1993
Do not publish